# CHARLESTON.

JOE VASEY *v.* NEW EXPORT COAL COMPANY *et al.*

Submitted November 1, 1921.   Decided November 15, 1921.

1. CORPORATIONS—*Stockholders Whose Stock was Issued as Fully Paid and Non-Assessable, Not to be Excluded from Participating in Corporation, or Required to Pay Par Value.*

   Where a corporation issues stock as "fully paid and non-assessable," with the consent and participation of all the stockholders, and there is no charter, statutory or constitutional provision rendering the transaction void, the agreement is valid and binding as against the corporation, and it can not afterwards repudiate the agreement, and exclude the holders of the stock from participation in the company's affairs, or compel them to pay the difference between the par value of the stock and what has been paid or agreed upon as full payment for it.   (p. 499))

2. SAME—*Agreement Whereby Lease· is Transferred to Corporation in Return for Entire Stock Given to Promoters as "Fully Paid and Non-Assessable" Held Binding on Corporation.*

   Where a corporation is organized by promoters, who desire to take a mining lease on coal properties, but prefer that the lease be executed in the name of the corporation, rather than in their own names, and the corporation, in consideration of the lease, issues to such promoters its entire capital stock as "fully paid and non-assessable," there being at the time no innocent incorporator upon whom the transaction might operate as a fraud, and no charter, statutory or constitutional provision rendering the transaction void, the agreement is valid and binding upon the corporation, and can not be questioned by it alone in a suit charging that the stock had not in fact been paid for.   (p. 499).

3. SAME—*May Not Cancel Stock for Holder's Failure to Pay Installment, but Must Foreclose Unless By-Laws Provide for Cancellation.*

   If a stockholder of a corporation, other than a railroad company, fail to pay any installment due upon his shares of

stock, when required to do so by appropriate corporate action, and the company desires to enforce its claim for such unpaid balance by a direct proceeding against the stock itself, instead of against the owner, it can not summarily cancel such stock, but must follow the foreclosure procedure prescribed by sections 29 and 30, chapter 53, Code, unless by a by-law the corporation has provided for the method of cancellation. (p. 500).

4.  Parties—*Secretary-Treasurer Named as Defendant in Bill Against Corporation Held Not Party in His Own Right.*

Though a secretary-treasurer of a corporation be named in a bill as defendant by his official designation, he does not thereby become a defendant in his own right, nor does he by the adoption of the corporation's cross-bill answers to the bill, when neither the bill nor the answers show cause for relief in his favor or pray relief against him in his own right.  (p. 5o3).

Appeal from Circuit Court, Kanawha County.

Suit by Joe Vasey against the New Export Coal Company and others.    Decree in favor of defendants, and plaintiff appeals.

*Reversed; judgment for plaintiff; remanded.*

W. J. Donaldson, and W. E. R. Byrne, for appellant.
S. B. Avis, and A. M. Belcher, for appellees.
Conley & Johnson, amici curiae, for Fischer and others.

Lynch, Judge:

Joe Vasey, plaintiff below, appellant here, complains of a decree cancelling a certificate held by him representing 30 shares of the capital stock of the New Export Coal Company, the appellee, and directing that the latter do recover of and from the plaintiff the sum of $272.22, "that being the balance due from him to said defendant company upon a statement of the accounts between him and said company as made by the court and now ascertained."    The suit was instituted in November, 1916, its main purpose being enforcement of a lien reserved by a paper writing in the nature of a deed of trust, given by defendant to secure a loan of $2,000.00 made by plaintiff to it August 23, 1915. The cross-bill answer, filed September, 1917, by way of affirmative relief prayed

for a decree requiring plaintiff to pay the balance of the purchase money then due and unpaid for stock of defendant company thertofore issued to him, and for other incidental relief.    The supplemental cross-bill answer, filed two years later, after reciting defendant's unsuccessful efforts to obtain payment of such unpaid purchase money, sought a decree compelling plaintiff to surrender for cancellation the certificate representing such stock.    From a decree in favor of defendant plaintiff prosecutes this appeal.

In 1915 the Perryville Coal & Mining Company owned about 166 acres of coal land in Kanawha County, in process of development and fully equipped with tracks, chutes, tipples, cars and other appliances necessary to successful mining operations.    Desiring to lease, instead of operate, its mines, lands and equipment, it empowered its attorney, G. A. Bealor, to interest prospective lessees in the property.    He brought the matter to the attention of the plaintiff, and succeeded in inducing him, together with Thomas Haggerty, J. L. Williams and Patrick Gilday, to take a lease of the property and operate it for their common benefit and profit.    Instead of taking the lease to themselves directly, plaintiff and his associates, including Bealor, organized the defendant, New Export Coal Company, with capital stock of $30,000.00, divided into 150 shares of a par value of $200.00.    The preliminary understanding was that the five shareholders were to share equally in  the new enterprise, 30 shares to each, but Bealor, in order to speed its organization, voluntarily offered to give to plaintiff one-half of his stock if he would "push this thing along and get things going."    Plaintiff, however, accepted only 7½ shares of the proposed gift, directing that the other 7½ be given to Haggerty.    On April 12, 1915, the stock was issued in the following proportions:    Vasey, 37½ shares; Haggerty,  37½ shares;  Williams, 30 shares; Gilday, 30 shares; Bealor,  15  shares.    The  certificates expressly provided on their face that  they  were  "fully paid and non-assessable."    To  the  New  Export  Coal Company, thus organized, as lessee, the Perryville Coal and Mining Company executed a lease dated April 27, 1915, for a term of 20 years, with royalty provisions  of 8 cents for

each ton of 2000 pounds mined and shipped from the premises, the minimum royalty prescribed being $2,500.00 per annum.

This lease constituted the sole assets of the defendant corporation. The incorporators paid nothing into its treasury at the time of the organization. The only consideration furnished by them for their stock was the lease from the Perryville Coal & Mining Company to the defendant, which they permitted the former to execute direct to the latter, instead of through themselves as intermediate lessees. Defendant being thus without funds, the incorporators agreed among themselves to provide a small amount of working capital until the company was on an independent operating basis, and decided that $2,500.00 or $3,000.00 would be sufficient for the purpose, each to pay in proportion to his stock interest. About the same time, attractive opportunities presented themselves for increasing their coal holdings by the purchase of adjoining tracts. In particular they acquired one tract of 444 acres, and in order to provide funds for the cash payment, plaintiff loaned the company $2,000.00, August 23, 1915, taking its note secured by a paper writing in the nature of a deed of trust on the land purchased. Similar demands for funds continued, and finally after plaintiff had advanced between $1,300.00 and $1,600.00, in addition to the loan of $2,000.00, he refused to contribute further, and his associates likewise declined to make further advancements unless he would bear his share of the burden. In order to raise more money, the corporate stock was increased from $30,000.00 to $50,000.00, later to $75,000.00, and $100,-000.00, and sold at par, bringing new stockholders into the company.

As already noted, plaintiff instituted this suit November, 1916, to recover his loan and advancements, which the company resisted on the ground that such sums, with the exception of the loan, were payments on his stock, and alleged that plaintiff still was largely indebted for the $7,500.00 worth of stock which had been issued to him. In the meanwhile plaintiff had sold at par 7½ of his 37½ shares, receiving therefor $1,500.00. On February 24, 1917, a stockholders'

meeting was held in the law offices of Conley & Johnson, in the City of Charleston, for the purpose of revising and recasting the crudely kept minutes of corporate meetings held since its organization, in order to afford proper legal basis for a $75,000.00 bond issue, proposed but never consummated. A. M. Belcher, attorney for the company, and also a stockholder, drew up the minutes, which were signed and accepted by all of the stockholders as expressing the correct corporate history of the company since its inception. On August 1, 1917, defendant's check for $2,500.00 was given to plaintiff, without designating its application to any particular item of his claim, as he insists, whereupon he applied it to the extinguishment of his unsecured claim and credited the balance on the $2,000.00 loan, but as defendant contends, with the express understanding that it was to be applied to the $2000.00 loan, with an agreement to refund any amount in excess of the sum needed to satisfy it.

By resolution of November 24, 1917, the company required that all stockholders, who had not paid in full for stock issued to them, must pay the balance due thereon on or before January 1, 1918, and in the event of their failure or refusal to do so, the secretary-treasurer was directed to cancel all such delinquent stock. Copies of this resolution were mailed to all stockholders listed as delinquent, including plaintiff, but none of the original stockholders have paid, all apparently having decided to await the termination of this suit, though all save plaintiff seem disposed to accept defendant's view that their advancements during the early days of the company's history were in reality payments on stock, and that they are yet liable for the amounts still unpaid. In November, 1918, one year after the adoption of the above resolution, a second resolution was adopted canceling and forfeiting all such unpaid stock and requiring the return of the certificates, but providing for the issuance of new certificates representing the amounts actually paid into the company on the old stock, at the par value of $200.00 per share. It is of this resolution canceling his certificate for 30 shares, as legally enforced by the decree in this cause, that plaintiff complains.

In support of their respective contentions, plaintiff and defendant assert and rely upon two totally inconsistent theories respecting the issuance of the 150 shares of stock to the five original incorporators.  It is the claim of the latter that at the time of the company's organization plaintiff and his associates furnished nothing of value in return for the stock which they received; that the lease which defendant acquired from the Perryville Coal Mining Company proceeded directly from 'it as lessor to defendant as lessee, and not through the incorporators as intermediaries; and that it was generally understood and agreed that they were to pay for their stock in cash as the company needed the money. In support of this contention, defendant introduced the receipts given by it to plaintiff and others at the times of their various advancements to the company during the early days of its organization; of which the following is a fair representation:  "January 15, 1916.  Received of Joe Vasey five hundred dollars, to apply on stock now held by him in the New Export Coal Co. G. A. Bealor, treasurer." With regard to such understanding, Bealor testified: "My understanding at the time was from general conversation which was had with the parties connected with the company at that time, that they were to furnish sufficient money in lieu of receiving that stock to put the New Export Coal Company on a paying basis. * * * That it was the understanding and agreement that the money would be paid by these persons to whom the company had issued stock as the company made calls or demands for the money, * * * at least to the extent of putting the corporation on a paying basis, self supporting; that was my understanding all the way through." And Haggerty testified: "There wasn't any arrangement beyond that we were to finance the company as to whatever it would take, whatever the account was; if it was of the value of the stock, we were supposed to put the money into the company." Further, at a stockholders' or directors' meeting, held November 11, 1915, at which plaintiff was present and participated, the following motion was made and adopted, as found at page 27 of the minute book: "Mr.

Haggerty moved that $50.00 be paid to Joseph Vasey for services as auditor, and that the balance of money due him, upon proper bills being rendered, be placed to his credit on stock now held by him in the New Export Coal Company.'' And on May 3, 1915, at the first meeting of the stockholders of the new company, Vasey made this motion:—''That John L. Williams be paid $100.00 per month, for a period of three months, as general manager of said company; one-half of said salary be, with his consent, retained by said company and same be put to his credit as a payment on the deferred payments on stock which he has subscribed for.''

On the other hand, plaintiff admits that these cash advancements were voluntarily paid by the original incorporators in order to put the company on a self sustaining basis, without any written or oral agreement of the company to repay them. But he denies that they were meant or intended as payments on stock, claiming that all such stock was fully paid for by him and his associates in turning over to the company the lease in question. He explains the use of the word ''stock,'' as found in the receipts and minutes referred to, by stating that it had reference merely to their mutual agreement to advance funds to the company in proportion to the shares of stock each held, and did not mean that such payments were on the stock itself, but pro rata to their respective holdings. In support of this contention, he introduces in evidence the original certificate for 37½ shares, which expressly recites that such stock is ''fully paid and non-assessable.'' Furthermore, the corrected minutes prepared at the Conley & Johnson meeting on February 24, 1917, at which all the outstanding stock was represented, disclose two resolutions, which, after setting forth the written proposal of G. A. Bealor, acting for and on behalf of the Perryville Coal & Mining Company, for the royalty stated, upon delivery by the latter of 150 shares of its capital stock of the par value of $200.00 per share, contain the express finding—'' that the property and rights offered by said letter to be leased, conveyed and transferred to this company are necessary for the business of this company, and that the same are of the value of $30,000.00;'' corresponding to the par value of the shares

89 W. Va.

to be delivered. These resolutions further accept the proposal referred to and authorize the delivery to Bealor, ''or to whomsoever he designates,'' of 150 shares of stock, ''fully paid up and non-assessable.'' These corrected minutes are signed by all the stockholders of the New Export Coal Company, ''who hereby ratify, approve and confirm all that has occurred at the foregoing meeting, the minutes of which we have read.''

Defendant, however, insists that the sole purpose of the corrected minutes was to remove legal obstacles to a proposed bond issue of $75,000.00; but no one successfully challenges their essential accuracy in stating the facts as understood by the parties, and it is important to note that on March 1, 1917, one month after the meeting referred to, plaintiff's original certificates for 37½ shares was canceled at his request and a new one issued to him for 30 shares, he having sold 7½ shares prior thereto, and the new certificate like the old one, declared on its face that the stock was fully paid and non-assessable.

Plaintiff argues, that since the defendant has by proper corporate action authorized the issuance of such stock as non-assessable and fully paid by the lease in question, as disclosed by its minutes and by the certificates as well, the valuation so placed upon it must be deemed conclusive, in the absence of actual fraud in the transaction, and the stock issued therefor not liable for any further call, as provided in section 24, ch. 53, Code, with regard to mining and manufacturing corporations. See also *Bank* v. *Belington Coal & Coke Co.,* 51 W. Va. 60; *Maryland Rail Co.* v. *Taylor,* 231 Fed. 119. Undoubtedly, if plaintiff's theory of the organization of the company is the correct one, then in the absence of actual fraud, the valuation placed upon the lease for which the stock was issued is conclusive and now beyond question. He insists that if the original incorporators had taken the lease in their own names and then had assigned it to the company which they had organized, such procedure clearly would have fallen within the scope and meaning of the statute, and that in substance and effect the result is the same where they direct the Perryville Coal & Mining Company to execute the lease to the New Export Coal Com-

pany, instead of through them as intermediary lessees. If plaintiff is correct in this view, the company clearly had no right, under the statute, to demand further payments on the stock, and the decree therefore is erroneous in attempting to cancel it for his failure to respond to those demands.

But without deciding that question, even accepting defendant's theory of the organization, can it now be heard to assert that stock, which it has issued as fully paid and non-assessable, was in fact not paid for? We are of opinion that it can not. Not only do the original and reissued certificates recite that the stock was fully paid and non-assessable, but the corrected minutes prepared at the Conley & Johnson meeting in 1917, after plaintiff had instituted this suit, at which all the stockholders were present, contain similar recitals, both as to the paid up character of the stock and the value at which the lease was accepted by the company, and the stockholders signed these minutes as stating the facts. Even those of the original incorporators who testify in support of defendant's position state that the advancements were only for one purpose, and that to the extent necessary to put the company on a self-operating basis. There was no fraud upon the company. The same persons who promoted it were also the original incorporators and hence on both sides of the transaction. There was no innocent incorporator at that time to be hurt, as was the case in *Davis* v. *Las Ovas Co.*, 227 U. S. 80. Rather the facts of this case are more nearly analagous to those of *Old Dominion Copper Co.* v. *Lewisohn*, 210 U. S. 206—à case involving secret profits by promoters. As was there said: ''The difficulty that meets the petitioner at the outset is that it has assented to the transaction with full knowledge of the facts. * * * At the time of the sale to the plaintiff, then, there was no wrong done to any one. Bigelow, Lewisohn and their syndicate were on both sides of the bargain, and they might issue to themselves as much stock in their corporation as they liked in exchange for their conveyance of their land. If there was a wrong, it was when the innocent public subscribed.'' See also *Hoffman Motor Truck Co.* v. *Erickson*, 124 Minn. 279; *Inland Nursery etc. Co.* v. *Rice*, 57 Wash. 70.

But innocent subsequent purchasers of stock are not complaining as parties in this suit. Nor are creditor's rights involved in it. Only the corporation is complaining. Doubtless, if it could show that stock issued in such a manner was wholly void and illegal, it could maintain this suit alone in its own name. But even granting, for argument's sake, that plaintiff can not invoke the provisions of section 24, ch. 53, Code, in sanction of the procedure followed, nothing therein contained declares void stock issued in violation of its terms. At most, it is only an executed ultra vires transaction of which the corporation can not complain. 5 Fletcher, Cyclopedia Corporations, Sec. 3580. As said in Sec. 3583 of the same texts: "It is undoubtedly true  *   *   *  that where a corporation issues watered stock or fictitiously paid up stock, with the consent of all the stockholders, and when there is no charter, statutory or constitutional provision rendering the transaction void, the agreement is valid and binding as against the corporation, and it can not afterwards repudiate the same and exclude the holders of the stock, or compel them to pay the difference between the par value of the stock or compel them and what has been paid or agreed upon as full payment." See also 1 Cook on Corporations (7th Ed.) Sec. 38; 4 Thompson, Corporations (2nd. Ed.) Sec. 3907; 14 C. J. Secs. 610-613. Under these circumstances and for the reasons stated, defendant can not now question the paid up character of plaintiff's stock.

Moreover, since the issuance of the stock was at most only ultra vires and not wholly void, the court erred in attempting to cancel it. Even assuming that plaintiff was to pay the full par value of his stock in cash, his failure to do so did not justify the course adopted by defendant and enforced by the court. Sections 29 and 30, chapter 53, Code, provide a summary foreclosure proceeding for just such cases, and this should be followed. Procedure by cancellation is authorized by statute only where stock of railroad companies is involved (Sec. 43, Ch. 54, Code), or where a by-law of a corporation provides for such method. (Sections 31, 32, 33, chapter 53, Code.) The defendant has no such by-law.

But plaintiff, having voluntarily made advancements to the company, pursuant to an agreement among the stockholders, can not now recover such sums. It is admitted that the company made no written or oral promise to reimburse him for such payments, and defendant's check for $2,500.00 clearly can not be applied to such claims, but only toward the liquidation of the $2,000.00 note held by plaintiff. But defendant's check overpaid that note to the extent of $72.22, and the court properly entered a decree in its favor for such amount, but for reasons already stated or implied, should not have included therein the $200.00 difference between the aggregate of the sums advanced by plaintiff and the amount received by him from the sale of 7½ shares of his stock.

Our order, therefore, will reverse the decree of the circuit court, enter a decree here for $72.22 in favor of defendant, New Export Coal Company, and award costs to appellant.

Upon the petition of New Export Coal Company, Thomas Haggerty and T. J. Davis, the cause was opened for re-argument, upon the theory that Davis was in such position as a party to the suit as entitled him to further consideration of his rights as a purchaser of shares of the capital stock of the corporation, issued by it and purchased by him after the exhaustion of the original shares, distributed by Vasey and others, as described in the former opinion. New Export Coal Company alone answered the bill, and filed a supplemental answer to it. Each answer was in the nature of a cross-bill and prayed for affirmative relief upon the new matter pleaded therein. Neither Haggerty nor Davis joined in any pleading in the cause, except as hereinafter noted. Apart from their appearance as witnesses on behalf of the corporation, they were silent spectators as the cause proceeded through its different stages to maturity for final hearing, from the date the bill was filed, February rules, 1917, until October 28, 1919, when they and other defendants, except the corporation, moved, and the court permitted them, to adopt as their own the cross-bill answers, and other pleadings of the corporation.

The first cross-bill answer of the corporation proceeded upon the theory that Vasey owed it $7,500.00, less certain

admitted credits that reduced the amount to $5,915.03, for the 37½ shares of the corporate stock, notwithstanding the provision in the certificate to the contrary. For this balance the answer prayed for a decree against plaintiff, but did not, and indeed could not with propriety, pray for such relief from other holders of the original certificates of stock containing the same provisions, as none of them except Gilday and Haggerty were parties to the suit, and Gilday was a party not in his own right, but in the capacity of an officer of the corporation, its president.

The second, or supplemental cross-bill answer, after the insertion of a part of the resolution, passed by the corporation's board of directors, calling upon the holders of the original stock issue to pay the balance alleged to be due the corporation thereon, and notifying them that in the event of their failure to heed the call, and they did not heed it, the board would, as it afterwards did, declare the certificates cancelled and annulled; and the relief prayed for was that such holders of the shares be compelled to surrender the certificates for cancellation, and that Vasey be enjoined from selling any of his shares. Each of these pleadings did, as it appears, also pray for general relief.

The course pursued in the adoption by one defendant of a pleading by another defendant, where both are interested alike in the matters so pleaded, and in the relief predicated upon them, is permissible, and is not questioned.

It is not in the exercise of the right to invoke and appropriate the pleading of a codefendant that any difficulty presents itself, but rather in the situation of Haggerty and Davis as parties defendant. Although in one respect Haggerty is in condition to ask relief, in that he is a party in his own right, not as an officer of the corporation, yet in another he is not in such a condition. He participated in the wrongful issuance and distribution of the stock, if such acts fall within the meaning of the term, wrongful. Having done so, he can not be heard to complain. And there is nowhere in the pleading so adopted any allegation of payment by him, or willingness on his part to pay the face value of his shares of stock, or that he intends to pay the amount so represented. The

resolution referred to applies to him and other incorporators alike, though seemingly designed to affect but one shareholder.

But what may justly and legally be said of Davis' status as defendant? Is he entitled to the relief prayed in the pleadings, whose allegations and prayers for relief he has invoked also? Is his status as a party defendant such that he can obtain the full measure of relief demanded by New Export Coal Company? As to him and his rights, if any he has, the facts and circumstances of the case being considered, there is not in the pleadings, taken as a whole, any allegation upon which to buttress the relief he asks. His name appears nowhere except in the summons to answer the bill; in the caption and body of the bill and in its prayer. Nowhere else in the entire record, except in the capacity of an officer of the corporation, he being its secretary-treasurer, when this suit was brought, and he may still occupy the same position, as far as the record shows; and finally as a witness on behalf of the corporation, and therein most frequently only by his official designation, secretary-treasurer, without specifically naming him.

The terms used to describe Davis' official relation to the coal company organization are insufficient to justify the application of the rule as to the identification of the person intended to be summoned, or required to answer or respond to the relief sought in the pleading. The purpose of making him a party to the suit, as the bill and its prayer clearly disclose, was that he in his official capacity, and Gilday in his official capacity and Haggerty may "be enjoined and restrained from carrying into effect the illegal assessment and illegal order calling in" for cancellation plaintiff's certificate of stock etc., as directed and required in the resolution of the corporation's board of directors, before referred to. He is in no sense a party, and did not, by the procedure pursued, become a party in his own right. In that respect he stands in the same relative situation as if he were a personal representative, and unless the pleading discloses a purpose, either to enforce against him some personal liability, or prays for relief personal to him, apart from his official relation to

the corporation, his rights can not be considered, except insofar as he is affected officially. 18 Cyc. 980; *Thurmond* v. *Coal Company,* 85 W. Va. 501, 506. ·

A re-examination of the facts and principles discussed in the first opinion does not warrant its alteration in any respect.

*Reversed; judgment for plaintiff; remanded.*