### Berry v. Simpson.

(Decided April 25, 1922.)

#### Appeal from Grant Circuit Court.

Corporations—Subscriptions to Stock—Action Against Promoter for Recovery—The law requires of promoters of proposed corpora-

tions the utmost good faith and a full disclosure of all material focts within their knowledge about the proposed corporation; but a failure upon his part to disclose to certain subscribers for stock that he had loaned money to or financed other subscribers for stock in order to enable them to pay therefor, is not such a fraud as authorizes a recovery from the promoter by such stockholder.

DeJARNETTE & HARRISON, DICKERSON & DICKERSON and O. S. HOGAN for appellant.

C. C. ADAMS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

This is an ordinary action by appellant seeking to recover from appellee five hundred dollars, the purchase price of five shares of stock alleged to have been sold to him by appellee in the Dry Ridge Sanatorium & Hotel Company, upon the ground that appellee procured appellant to purchase from him the stock because of fraudulent misrepresentation by appellee, who was, at the time, a promoter of the said corporation thereafter organized, and who was then the owner of certain property in Dry Ridge, Kentucky, upon which a mineral well was located and which property was thereafter sold to the corporation after its organization.

This is a companion to the case of Simpson v. Blaine, 191 Ky. 465, and grows out of the same transactions therein set forth.

The allegation in substance is that defendant fraudulently and falsely represented to plaintiff that the proposed corporation was being organized for the purpose of erecting and conducting a sanatorium and hotel at Dry Ridge, Kentucky, and defendant at the time exhibited to him a list purporting to have been signed by a number of reputable citizens of that vicinity agreeing to take shares of stock in the proposed corporation; that relying upon his representation that a first-class sanatorium and hotel was to be erected, and upon the writing shown him by defendant containing the names of residents and business men who were subscribers to the stock, in whose business ability plaintiff had confidence, he subscribed to the shares of stock in the corporation, and that the representations were false and known by the defendant to be false when made, and were made for the fraudulent purpose of deceiving him and inducing him to buy the stock. That at

the time defendant was promoting the corporation he was the owner of some property in Dry Ridge on which was located a mineral well, and for the purpose of selling said property to the corporation for a sum in excess of its market value he organized and promoted the corporation, and after its organization became one of its directors and managers; and that after the organization he did sell the property to the corporation at the price of twenty-five thousand dollars and in order to induce the plaintiff and others to take stock he fraudulently conspired and agreed with a number of business men to subscribe for a certain amount of stock, and such persons placed their checks in his hands with the agreement and understanding that the stock would never be taken by them and that their checks would never be cashed, while certain other persons gave to him their notes for stock, and he agreed secretly with them that the notes would never have to be paid, and consequently the corporation was organized with less than one-half of the stock being taken by *bona fide* subscribers; that defendant exhibited the signatures of the fictitious stockholders and exhibited their spurious notes and checks and represented to plaintiff they were in good faith and genuine, and plaintiff so believing and having faith in the business ability of such persons and relying upon the representations of defendant, subscribed for the stock.

The answer was a traverse, and an amended answer undertook to plead an estoppel against the plaintiff.

Upon a trial the jury returned a verdict for the defendant, the plaintiff's motion and grounds for a new trial were overruled, and he has appealed.

Inasmuch as we have concluded that the defendant's motion for a directed verdict should have been sustained, it is only necessary that we should recite the effect and purport of the evidence in order to dispose of the case.

As is recited in the case of Simpson v. Blaine, in 1915, there was much interest in certain mineral springs and the quality of water therein at and near Dry Ridge. The water had acquired quite an extensive reputation for its curative qualities in certain diseases, and there were several such sanatoriums and hotels projected about that time. Appellee was the owner of a tract of land in or near the town, of six and one-half or seven acres, upon which there were many improvements, and upon which he had previously caused to be drilled a well several hundred feet deep, and the water from which was re-

puted to be of the same general nature as the other water in the locality, which had acquired such a reputation. Appellee, in his individual capacity, had, in a small way, worked up a certain demand for the water from his well and entertained a limited number of guests seeking the water at his own home.

In this situation he, aided by a number of his friends and acquaintances, conceived the idea of organizing a corporation for the purpose of building and conducting a commodious sanatorium or resort upon this property, and by and with the consent of all those interested the capital stock of the corporation was fixed at twenty-five thousand dollars, and it was understood by everybody connected with the matter that the purpose of its organization was to buy the property from appellee for twenty-five thousand dollars and operate a sanatorium thereon. Accordingly, thirteen thousand five hundred dollars was subscribed to the capital stock of the twenty-five thousand dollar corporation, and the stockholders had a meeting on the 25th day of June, 1915, for the purpose of organizing. At that meeting the parties were advised by an attorney who was present that at least one-half of the capital stock must be paid for in cash before the organization of the corporation, and there were a number of the subscribers present who were not at the time prepared to pay the cash for their stock. The persons so unable to pay cash for their stock were chiefly friends and neighbors of appellee and he entered into an agreement with them by which they were to give their checks for their several subscriptions to the secretary of the company, and appellee agreed to take care of the checks or see that they were not presented at the bank and agreed with such subscribers that he would accept their notes for their respective subscriptions as if it was a cash payment upon the first payment by the corporation, and it is this agreement which appellant relies upon chiefly as a fraudulent scheme concocted to induce him and others to pay cash for their stock.

On the day of the organization, after more than one-half of the stock had been paid for in cash in the manner above indicated, appellee conveyed his property to the corporation for a recited consideration of twelve thousand five hundred dollars paid in cash, and retained a lien for the other twelve thousand five hundred dollars, and every person present understood precisely the exact nature of that transaction, viz.: that of the money paid in

that day twelve thousand five hundred dollars of it was to be paid as the first payment on appellee's property, and he was to retain a lien for the other twelve thousand five hundred dollars.

It is the complaint of appellant not that he did not understand this transaction, not that appellee misrepresented any material fact to him, but that he did not know and appellee concealed from him until long thereafter that he had accepted as a part of the cash payment of twelve thousand five hundred dollars the notes of certain subscribers for stock which they were that day unable to pay in cash. By some process of reasoning it is sought to show that this was some sort of an injustice to or fraud upon the rights of appellant; but an analysis of it will disclose that it was nothing more or less than an acceptance by appellee as so much cash, of the notes of such subscribers and an agreement to treat their notes as a part of the cash payment by the corporation.

The transaction is nothing different from and has the same effect as if appellee had loaned the money to the several subscribers who were unable to pay, and they had then gone through the form of paying it to the corporation for their several stock subscriptions, and the corporation had then paid it to appellee on his first payment for the property and appellee had then loaned the same money back to the subscribers and taken their notes for it.

The fact that the promoter had arranged with certain of his friends and neighbors who had subscribed to the capital stock of a corporation, to finance them in the purchase of such stock, furnishes no reason why one who paid cash for his stock, should be relieved thereafter from his investment at a time when it is demonstrated to have been an unfortunate one.

Appellant's own evidence shows that in the purchase of this stock there had been no false representation made to him by appellee or any one else; that he had been a visitor in the neighborhood, had himself used the water, had personally seen the benefits received from it by many people and had great faith in its curative properties and believed it was a good business enterprise; and it is apparent that he did not rely upon any representation made to him by appellee or any other person, but having himself from personal knowledge and observation the opinion that the water was of very fine quality and having seen the benefits received therefrom by others, he believed

as a business enterprise it could be made a success, and therefore invested his money.

The evidence for appellant shows that at the time it was believed by all those interested in the organization of the corporation that twenty-five thousand dollars was a fair price for the property appellee conveyed to the corporation, and the minutes of the stockholders' meeting show that it was unanimously recommended to the board of directors elected that day that they purchase the property at that price.

Of course the law requires of promoters of proposed corporations the utmost good faith and a full disclosure of all material facts within their knowledge about the proposed corporation and its objects and purposes; but what difference could it have made to appellant if appellee had disclosed to him at the time of the organization that he proposed to finance certain of his neighbors and friends temporarily so that they might take stock therein? What could it possibly have mattered to appellant that appellee loaned money to the subscribers to enable them to pay cash for their stock? In no aspect of the case was this any fraud upon his right and whether it was disclosed to him or not could not possibly have affected his conduct in the matter.

The evidence fails to show any fraud or deceit practiced upon appellant, and the court should have sustained his motion for a directed verdict; in that view of the case it is unnecessary to consider the correctness of the instructions.

Judgment affirmed.