[Civ. No. 5793.  First Appellate District, Division Two.—July 27, 1927.]

SAN LEANDRO CANNING COMPANY, INC. (a Corporation), Appellant, v. L. PERILLO et al., Respondents.

Edwin H. Williams for Appellant.

Roscoe D. Jones for Respondents.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to recover a judgment for money. The defendants appeared jointly and filed a joint demurrer,

the joint demurrer was sustained and a judgment based thereon was entered. From that judgment the plaintiff has appealed.

▮ The defendants interposed a preliminary objection to the hearing of this appeal. The objection rested on the fact that the plaintiff had failed to pay its corporate license tax and that its rights as a corporation were suspended February 27, 1926. The point is without merit. The record before us shows that the action had been tried in the lower court, an appeal had been taken, the transcript filed, and all briefs filed, prior to the first day of May, 1925. True it is that the rights of the plaintiff were suspended February 27, 1926. However, it is equally true that on May 16, 1927, its rights were wholly restored. It thus appears that during the period of time during which its rights were suspended, the plaintiff was inactive, and neither of the parties, nor the court, was called upon to take any action. Under these circumstances the statute has not been violated. (Deering's General Laws, part I, p. 554, sec. 11; *Ransome-Crummey Co.* v. *Superior Court*, 188 Cal. 393 [205 Pac. 446].)

The San Leandro Canning Company, hereinafter called the old company, was incorporated on December 11, 1919. It had a capital stock of $100,000, divided into 1,000 shares of a par value of $100 each. J. C. Toffelmier, L. J. Toffelmier, and L. Perillo were its directors. It transacted a canning business for a short time and then it transpired that it needed additional capital.

On November 18, 1920, L. J. Toffelmier, J. C. Toffelmier, L. Perillo, J. E. Faustina, Allen E. Pelton, A. Felizianetti, Sr., and F. Stenzil owned all of the stock of the old company. On that date they entered into an agreement to reorganize the old company by incorporating a new company, the plaintiff herein, and did incorporate it, with a capital stock of $1,000,000, and transferred the properties of the old company to the new company under an arrangement by which the new company took over all of the assets of the old company and assumed its debts in exchange for a block of stock in the new company of the par value of $135,000. The stock taken in exchange was delivered to the old company and it divided the stock among the individuals above named. The directors of the new company were the individuals above mentioned. It is alleged that it was a part

of the agreement that $150,000 of the stock of the new company would be sold to the public and that $69,000 was so sold at par to certain individuals mentioned.

The old company was, by decree of court, dissolved May 15, 1922, and the first three individuals above mentioned were appointed trustees for the purpose of liquidating the old company. The new company became insolvent in April, 1922, and at that time its books were experted and from the report of the experts the plaintiff learned the above facts.

It is alleged that at the time the new company took over the assets of the old company the said assets exceeded the liabilities to the amount of $20,000. The plaintiff deducts that $20,000 from $135,000, the value of the stock delivered to the old company, and claims damages in the sum of $115,000.

It is alleged that F. Stenzil is dead and it will be noted that he is not a defendant.

In connection with the foregoing facts the plaintiff alleges that the defendants were promoters; that they conspired and that they concealed the facts from the plaintiff as to the true valuation of the properties received from the old company. It is not alleged that any false representations were made. It is not alleged that the defendants committed any overt acts of concealment by making any false entries in the records of either the old company or the new company, nor that they omitted to make full and complete entries in said records. The case rests, therefore, on whether the defendants in any instance failed to speak and disclose fully and completely all facts concerning the value of the assets of the old company when it was their legal duty to do so.

It is not claimed, and, indeed, it may not be claimed, that ordinarily one who purchases stock in a corporation occupies the position of *cestui que trust* and as such *ipso facto* stands in a fiduciary relation to the seller of the stock. However, certain combinations of facts may arise which will indicate that status. Promotion schemes sometimes present an example. The plaintiff cites and relies on *Ex-Mission L. & W. Co.* v. *Flash,* 97 Cal. 610 [32 Pac. 600], *Burbank* v. *Dennis,* 101 Cal. 90 [35 Pac. 444], *Lomita Land & Water Co.* v. *Robinson,* 154 Cal. 36 [18 L. R. A. (N. S.) 1106, 97 Pac. 10], *California-Calaveras Min. Co.* v. *Walls,* 170 Cal. 285

[149 Pac. 595], and *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 Pac. 243.] The defendants contend that those cases are not in point. An examination of each case will disclose that the alleged promoters were attempting to develop a scheme in which it was the intention to purchase property for the purpose of a company thereafter to be formed and to sell to that company the properties so purchased at an advance without a full disclosure of the facts. ■ In the instant case it will be noted that the old company was, and had been for some years, the owner of the property involved. When such fact exists there is authority for the contention that no duty rests on the owner of property to disclose the profit, if any, he is making in the transaction. (*Densmore Oil Co.* v. *Densmore,* 64 Pa. 43; *Tompkins* v. *Sperry, Jones & Co.,* 96 Md. 560 [54 Atl. 254]; *Blum* v. *Whitney,* 185 N. Y. 232 [77 N. E. 1159]; *Old Dominion Copper Co.* v. *Lewisohn,* 210 U. S. 206 [52 L. Ed. 1025, 28 Sup. Ct. Rep. 634]; *Vasey* v. *New Export Coal Co.,* 89 W. Va. 491 [109 S. E. 619]; *Berry* v. *Simpson,* 194 Ky. 545 [239 S. W. 1049]; 1 Thompson on Corporations, 2d ed., secs. 108 and 123.) The distinction which we have just indicated is clearly pointed out by the supreme court in *Burbank* v. *Dennis,* 101 Cal. 90, at page 98 [35 Pac. 444].

■ The third point made by the plaintiff is that the plaintiff is the proper party to complain for the misappropriation of its treasury stock. *Ex-Mission L. & W. Co.* v. *Flash, supra,* supports it in this contention.

■ The plaintiff makes some contention at least that its cause of action rests on section 3 of article XII of the constitution. That contention may not be sustained. Since this action was commenced the supreme court, in *Dean* v. *Shingle,* 198 Cal. 652 [46 A. L. R. 1156, 246 Pac. 1049], has carefully analyzed and defined the meaning of that section. An examination of that case will disclose that the facts of this case do not bring it within the purview of the provision of the constitution just cited.

What we have just said, however, does not dispose of the case. The plaintiff's pleading presents other facts which must be considered. ■ The old company, through J. C. Toffelmier, L. J. Toffelmier, and L. Perillo, its board of directors, organized the new company and installed as its board of directors J. C. Toffelmier, L. J. Toffelmier,

L. Perillo, Allen E. Pelton, J. E. Faustina, A. Felizianetti, and F. Stenzil. The persons so installed constituted and were all of the stockholders of the old company. After the new company was formed the old company transferred to the new company its assets and took over from the new company a block of stock at par value amounting to $135,-000. It is not alleged that the new company had any independent advice. It is patent that in the transfer or exchange the new company did not have an independent board of directors to determine, in the interest of the new company, whether the terms of the exchange were fair or otherwise. The transaction between the trustee, the old company, and its beneficiary, the new company, during the existence of the trust, by which the trustee obtained an advantage from the beneficiary, it is presumed was entered into by the latter without sufficient consideration and under undue influence. The complaint contains no allegations to the contrary. As the record stands the burden rests on the old company to come forward and plead and prove such facts as will show that the new company was not overreached. Failing to come forward and make the showing above mentioned, the old company is liable to the plaintiff. The views which we have just stated find full support in 1 Thompson on Corporations, third edition, section 118, and especially in *Lagunas Nitrate Co.* v. *Lagunas Syndicate* [1899], 2 Ch. 392. That case is very long, but the facts in all material respects are parallel to the facts presented in the record before us. The syndicate had become the owner of a large plant located in Chile. It was known as Lagunas Nitrate Works. After operating it for a time the syndicate proceeded to separate the mining department from the factory department and to organize the Nitrate Company to take over and operate the factory. To do this it formed the plaintiff company. The new company had a capital of £900,000. Out of that capital £300,-000 were to be delivered to the syndicate in fully paid-up shares; and stock in the sum of £550,000 was to be sold to the public for cash and that cash was to be delivered to the syndicate. The company was organized with a board of directors including the seven directors of the syndicate and two other persons selected by them. The latter two were agents of the syndicate selected by it to fill out the board of directors. After the organization of the company

the syndicate transferred to it for £400,000 property which had cost the syndicate £110,000. These transactions occurred in June, 1894. The venture was not successful. When it transpired that the enterprise was about to fail, the stockholders elected a new board of directors, and then commenced an action against the syndicate and the original board of directors to obtain relief. This action was heard and determined by Romer, Judge. From his judgment an appeal was taken to the court of appeal. All of the judges concurred in deciding that the syndicate was the promoter of the company and as such that it had assumed a fiduciary relation toward the company, and as to this part of the case the court cited and followed *Erlanger* v. *New Sombrero Phosphate Co.*, 5 Ch. D. (Eng.) 73, 3 App. Cas. 1218. It further held that the relation of trustee and beneficiary continued until the transfer had been fully consummated.

It is patent, therefore, that the facts of this case, which we have recited above, show that as to the plaintiff company the old company was a promoter and assumed a fiduciary relation to the plaintiff. Such being the facts, it is settled by the provisions of section 2235 of the Civil Code that the plaintiff has its remedy against the old company. The demurrer of the trustees of the old company should have been overruled.

■ This brings us to a consideration of the liability of the six individuals who are also made defendants in this case. They were the directors of the new company. As such they were bound to exercise that degree of care which men of common prudence take of their own concerns; they were bound to act honestly and not fraudulently; and they were bound to confine their activities within the scope of their lawful powers. (2 Thompson on Corporations, 3d ed., sec. 1429; 4 Fletcher's Cyc. Corp., secs. 2504, 2505, 2941 and 3024; *Lagunas Nitrate Co.* v. *Lagunas Syndicate, supra; Scott* v. *Depeyster*, 1 Edw. Ch. (N. Y.) 513, 543; *Savings Bank's Assignee* v. *Caperton*, 87 Ky. 306 [12 Am. St. Rep. 488, 497, 8 S. W. 885] ; *San Pedro Lumber Co.* v. *Reynolds*, 121 Cal. 74, 81, 82 [53 Pac. 410].)

■ Having ascertained the duties and liabilities of the said individuals to the new company, it becomes necessary to turn to the complaint and ascertain the allegations it contains with reference to the individuals. The complaint con-

tains much irrelevant matter. As a ruling on a motion to strike is not before us, we will not pause to pick out each irrelevant statement and show wherein it is irrelevant. However, the complaint contains some allegations which, in the face of a demurrer, are not irrelevant. It alleges that the assets of the old company were of a net value of $20,000 and that they were transferred to and accepted by the new company at a value of $135,000. In this same connection it is alleged that the directors entered into a conspiracy to transfer the properties of the old company to the new company "with the intent and for the purpose of defrauding the plaintiff corporation," and that the new company was caused to issue the block of stock to the old company at an exorbitant price "for the purpose of cheating and defrauding" the new company. Bearing in mind that the individual defendants, as directors of the new company, stood in a fiduciary relation to the new company, the allegations just quoted sufficiently pleaded fraud. (*Woodroof* v. *Howes,* 88 Cal. 184, 187–190 [26 Pac. 111]; *Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561, 573 [42 L. R. A. (N. S.) 125, 126 Pac. 351].) For the reasons last stated the demurrer of the directors of the new company should have been overruled.

The judgment is reversed, with directions to the trial court to overrule the demurrer and allow the defendants to answer.

Nourse, J., and Cashin, Acting P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 22, 1927.