[S. F. No. 6429.   Department One.—September 13, 1913.]

WESTERN STATES LIFE INSURANCE COMPANY (a Corporation), Appellant, v. ARTHUR D. LOCKWOOD et al., as Executors etc. of Arthur R. Briggs, Deceased, Respondents.

CORPORATION—VIOLATION BY DIRECTOR OR PRESIDENT OF FIDUCIARY RELATION—SECRET PROFITS MUST BE ACCOUNTED FOR.—Any secret profit obtained by the president or a director of a corporation by reason of any violation or disregard by him of any of the obligations incident to the fiduciary or *quasi* trust relations that he occupies toward the corporation and its stockholders, cannot be retained by him, but must be accounted for to the corporation.

ID.—DIRECTOR OR PRESIDENT CANNOT ASSUME A POSITION ADVERSE TO HIS FIDUCIARY DUTY.—Such an officer, and especially a director who is president of the corporation, is obligated, by reason of his mere occupancy of the office, to act in all matters affecting the corporation and its stockholders, solely with an eye to their best interests, unhampered by any pecuniary interest of his own.   The law in this regard is so strict that he is not allowed to assume a position that is possibly adverse to his fiduciary duty.

ID.—LIFE INSURANCE CORPORATION—OBTAINING SUBSCRIPTIONS TO STOCK —SECRET ARRANGEMENT OF PRESIDENT TO SHARE PROFITS OF EMPLOYEE.—A director and president of a life insurance corporation,

the directors of which were proceeding, as required by section 414 of the Civil Code, "to secure subscriptions to the full amount of the fixed capital," has no right to enter into a secret arrangement with one employed, under an unexecuted contract, to obtain subscriptions to its capital stock, by which he is to secretly share in the profits of such employee, and he must account to the corporation for the share of the profits so secretly acquired by him. This result follows, although the contract of employment was entered into prior to his becoming director and president, and definitely fixed the net amount to be received by the corporation on account of the subscriptions, and such amount was in fact received by it.

ID.—ASSUMING POSITION HOSTILE TO CORPORATION—WANT OF INTENT TO INJURE CORPORATION IMMATERIAL.—The president of the corporation, by secretly acquiring such pecuniary interest, secretly placed himself in a position that was hostile to the interests he was bound to protect as an officer of the corporation, where conflict might arise between his trust duty and his personal interest. Such a position the law does not allow him to assume. For him to do so is a violation or disregard of the obligation incident to the fiduciary or *quasi* trust relation that he occupies. It is immaterial that he is entirely free from any intent to injure the corporation in the slightest degreee, acting in fact in the highest good faith throughout, or that his actions were really to the advantage of the corporation.

ID.—ASSUMING POSITION ANTAGONISTIC TO SUBSCRIBERS FOR STOCK.— By acquiring and retaining such interest in the net profits of the person employed to obtain the subscriptions to the capital stock of such corporation, necessary under the law to enable it to commence and continue its business, the president placed himself in a position which the law absolutely precluded him from assuming, that was antagonistic, so far as pecuniary interest was concerned, to the interests of those who were to subscribe for the stock.

ID.—DIRECTORS SOLICITING SUBSCRIPTIONS ACT AS PROMOTERS—SECRET PROFITS PROHIBITED.—The directors of such corporation, in the performance of their legal duty of procuring the necessary stock subscriptions to enable the corporation to commence and continue its business, were practically "promoters" of the corporation, and as such occupied a fiduciary relation to it, and to its stockholders, and were precluded from deriving any advantage over other stockholders, without a full and fair disclosure of the transaction.

ID.—SECRET PROFITS RECOVERABLE BY CORPORATION—DAMAGE TO CORPORATION NOT ESSENTIAL.—The corporation is entitled to recover secret profits obtained by a director or promoter by a violation of the obligation resting upon him, and it is entirely immaterial that the corporation may not have been damaged by the transaction in which they were made.

ID.—ESTATE OF DECEASED PERSON—CLAIM FOR SECRET PROFITS—FORM OF.—A claim for the secret profits so acquired by the president, presented by the corporation against his estate, need not be drawn with the precision which would render a complaint good against a special demurrer. It is sufficient to sustain an action by the corporation to recover such profits that the claim, as presented, was based upon the cause of action there asserted, and sufficiently showed the nature of the corporation's demand to give the personal representatives of the estate such information as was necessary to enable them to act upon it advisedly.

ID.—CLAIM OF CORPORATION—VERIFICATION BY SECRETARY—USE OF WORD "CLAIMANT" INSTEAD OF "AFFIANT."—Such claim, if verified by the secretary of the claimant corporation, is not rendered insufficient, merely because his affidavit thereto, in deposing to the truth of the facts stated therein, uses the phrase "to the knowledge of said claimant," instead of the statutory words "to the knowledge of the affiant."

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Otto Irving Wise, for Appellant.

Frank H. Short, Titus, Creed & Dall, and A. E. Bolton, for Respondents.

Wm. H. Bryan, for Legatees of Arthur R. Briggs, deceased, on petition for hearing in Bank.

ANGELLOTTI, J.—In this action, the demurrer of defendants on the ground of want of facts to state a cause of action was overruled. The defendants filed an answer and cross-complaint. They subsequently dismissed their cross-complaint, and, by permission of the court, filed an amended answer. When the action came on for trial before another judge, defendants moved for judgment on the pleadings, upon the ground that the complaint does not state facts sufficient to constitute a cause of action. This motion was granted, and judgment was thereupon entered that plaintiff take nothing and that defendants recover their costs. This is an appeal by plaintiff from such judgment.

The only question presented on this appeal is whether the complaint states facts sufficient to constitute a cause of action.

Substantially, the case made by the complaint is as follows: Plaintiff is a corporation incorporated on October 11, 1909, under the law of this state, to do a life insurance business therein. Its articles of incorporation provided for a capital stock of one million dollars, divided into one hundred thousand shares of the par value of ten dollars each. On October 16, 1909, it entered into a written agreement with the partnership firm of Pratt & Grigsby, by which said firm agreed to sell all the capital stock of plaintiff within one year from the date of its incorporation, and to pay plaintiff therefor thirteen dollars per share for the first fifty thousand shares sold and issued and fifteen dollars per share for the remaining fifty thousand shares, making in all one million four hundred thousand dollars, said sale to be without expense of any kind to the plaintiff. On October 19, 1909, said Arthur R. Briggs, defendants' testator, was elected president of plaintiff corporation, and from that day to and including October 11, 1910, was a director and the president of said corporation. In January, 1910, "he demanded of said Pratt & Grigsby a sum equal to twenty-two and one-half per cent of the net profits earned, or that would be earned by said Pratt & Grigsby from the sale of the capital stock of plaintiff corporation under and by virtue of the agreement between said Pratt & Grigsby and plaintiff" and "threatened to resign as president of plaintiff and that he would not render further service as such president in aiding said Pratt & Grigsby in the sale of the capital stock of plaintiff" if Pratt & Grigsby refused to pay him said amount. Pratt & Grigsby "well knowing that without the aid, assistance and co-operation of said Arthur R. Briggs they would be unable to sell the entire capital stock of plaintiff within one year from the date of the incorporation of plaintiff as provided in their agreement and by law," thereupon agreed to pay him the percentage demanded. They did sell all the stock as provided in the agreement between them and plaintiff, and prior to October 11, 1910, paid to plaintiff therefor the sum of one million four hundred thousand dollars. They sold the same at such price that they "earned a net profit of

$180,000,'' and in pursuance of their agreement with defendants' testator paid to him at various dates between March 7, 1910, and September 22, 1910, amounts aggregating forty thousand five hundred dolllars, being twenty-two and one-half per cent of their net profits of one hundred and eighty thousand dollars. Plaintiff and its board of directors never knew anything about the transaction between Mr. Briggs and Pratt & Grigsby until after the death of the former, which occurred October 24, 1910, and never authorized, consented to, or acquiesced therein. On June 13, 1911, which was within the time allowed by law for that purpose, the plaintiff presented to defendant executors its verified claim against the estate of Mr. Briggs for forty thousand five hundred dollars, based on the facts stated, together with interest, and said executors failed to take any action thereon within ten days after said June 13, 1911, or at all. Treating such failure as a rejection of the claim by the executors, as it had a right to do (Code Civ. Proc., sec. 1496), plaintiff commenced this action on September 5, 1911.

The contract between plaintiff and Pratt & Grigsby was, as shown by the facts alleged, really one of employment. The directors of plaintiff were proceeding, as required by law (Civ. Code., sec. 414), "to secure subscriptions to the full amount of the fixed capital." This was a duty enjoined upon the directors by the section just referred to. In the name of the corporation they employed Pratt & Grigsby to secure these subscriptions, under an arrrangement by which Pratt & Grigsby were to bear all the expense of doing the work and were to receive as their compensation from the plaintiff all sums they could obtain from the subscribers in excess of thirteen dollars per share on the first fifty thousand shares, and fifteen dollars per share on the second fifty thousand shares, they further agreeing to fully complete their work and make all the required payments to the corporation within one year. Of course, no question is here involved as to the validity of this contract of employment as between Pratt & Grigsby and the corporation.

These being the circumstances, while the undertaking of Pratt & Grigsby was unexecuted, Mr. Briggs, then one of the directors and president of the corporation, became a partner of Pratt & Grigsby in the net profits received and to

be received by them under their contract of employment with the corporation, his share of said profits under the arrangement being twenty-two and one-half per cent of said net profits, and the consideration therefor being such "aid, assistance and co-operation" as he might be able to give them in completing their undertaking. Under this arrangement he, while still director and president of the corporation, received forty thousand five hundred dollars to his own use. Neither the corporation nor any of the directors ever had any notice or knowledge of his connection with Pratt & Grigsby.

None of the many cases cited by learned counsel for defendants presents an exactly similar question to that presented by the case at bar,—namely: the right of a director to enter into a secret arrangement with one employed to obtain subscriptions to the capital stock of a corporation, by which he is to secretly share in the profits of such employee, the net amount to be received by the corporation on account of the subscriptions being definitely fixed by the terms of the contract of employment.

It is well settled that any secret profit obtained by the president or a director of a corporation by reason of any violation or disregard by him of any obligations incident to the fiduciary or *quasi* trust relations that he occupies toward the corporation and its stockholders, cannot be retained by him, but must be accounted for to the corporation. (See 3 Clark & Marshall on Corporations, sec 758.) Such an officer, and especially a director who is president of a corporation, is obligated, by reason of his mere occupancy of the office, to act in all matters affecting the corporation and its stockholders, solely with an eye to their best interests, unhampered by any pecuniary interest of his own. "By assuming the office he undertakes to give his best judgment in the interests of the corporation in which he acts for it, untrammeled by any hostile interest in himself or others. There is an inherent obligation on his part that he will in no manner use his position to advance his own interests as an individual, as distinguished from that of the corporation." (*Bird etc. Co.* v. *Humes,* 157 Pa. St. 278, [37 Am. St. Rep. 727, 27 Atl. 750].) The law in this regard is so strict that he is not allowed to assume a position, to use the language of the New

York court of appeals in *Seymour* v. *Spring Forest Cemetery Assoc.*, 144 N. Y. 333, [26 L. R. A. 859, 39 N. E. 365], that is "possibly adverse to" his "fiduciary duty." It is universally held as a consequence of this doctrine that he may not on behalf of the corporation contract with himself as an individual, which of course includes contracting with others with whom he has an interest, without the full knowledge and approval of the corporation. (See *Pacific Vinegar etc. Works* v. *Smith*, 145 Cal. 352, [104 Am. St. Rep. 42, 78 Pac. 550], and cases there cited.) As said in the case just cited:

"The philosophy of this rule is quite apparent, and its inflexibility is the strongest safeguard which the law can offer for the protection of the interests of the beneficiary. The great purpose of the law is to secure fidelity in the agent. When one undertakes to deal with himself in different capacities—individual and representative—there is a manifest hostility in the position he occupies. His duty calls upon him to act for the best interests of his principal; his self interest prompts him to make the best bargain for himself. Humanity is so constituted that when these conflicting interests arise the temptation is usually too great to be overcome; and duty is sacrificed to interest. In order that this temptation may be avoided, or, if indulged in, must be at the peril of the trustee, it has been wisely provided that the trustee shall not be permitted to make or enforce any contract arising between himself as trustee and individually with reference to any matter of the trust, nor will the court enter into any examination of the honesty of the transaction."

It cannot be questioned that if Mr. Briggs had been a director and president of plaintiff corporation at the time the contract was entered into between it and Pratt & Grigsby, and at that time had the pecuniary interest with Pratt & Grigsby in such contract that he subsequently acquired, he could not retain the profits he received thereunder. While obviously some considerations for such a conclusion would have then existed that do not exist here, we are of the opinion that the same conclusion is inevitable, in view of the general rules applicable to officers of corporations in their relations to the corporation and its stockholders, and the reasons therefor. While director and president, Mr. Briggs acquired and retained, without the knowledge of the corpora-

tion or his fellow-directors, a personal and pecuniary interest with Pratt & Grigsby in their contract of employment with the corporation while it was still unexecuted on their part, resulting in the receipt by him of the forty thousand five hundred dollars here involved. It cannot be doubted that as president and director it was his duty to guard the interests of the corporation in any matter that might arise in reference to this contract. It is manifest that so long as the contract remained unexecuted by Pratt & Grigsby, questions might arise between the corporation on the one hand and Pratt & Grigsby on the other. The fact that the contract had been entered into did not by any means conclude all possible questions between the contracting parties. It was conceivable that Pratt & Grigsby might fail to fully perform their undertaking within one year from the date of the incorporation of plaintiff, with the result that the effect of such failure under the terms of the contract would have to be determined. In passing, it may be said that we find in the law no warrant for the suggestion in the briefs that a failure to obtain fully paid up subscriptions for all the stock within such year would *ipso facto* end the corporation, or prevent it from proceeding with the work of obtaining such subscriptions. (See Pol. Code, sec. 594.) A change in the terms of the contract by mutual consent of the parties was always possible, not only in regard to the time within which the service stipulated for should be completed, but also in regard to the terms relating to compensation. It was even conceivable that facts might be made to appear to a director acting solely with a view to the best interests of the corporation, unhampered in any degree by any personal interest except his interest as stockholder, which would seem to require affirmative action looking to a reformation or rescission of the contract of employment. These are some instances of questions that might arise between the corporation on the one hand and Pratt & Grigsby on the other, and as to all of them it would be the duty of the president to act solely with regard to the best interests of the corporation, without regard to the interests of Pratt & Grigsby. They show sufficiently, we think, that in acquiring this interest in the contract of employment of Pratt & Grigsby, Mr. Briggs acquired an interest that was possibly adverse to his fiduciary duty. It

was thenceforth to his pecuniary interest to decide any question that might arise between the contracting parties in such a manner as would be most profitable to Pratt & Grigsby, rather than to the corporation. In other words, in so far as pecuniary interest was concerned, he secretly placed himself in a position that was hostile to the interests he was bound to protect as an officer of the corporation; in a position where conflict might arise between his trust duty and his personal interest. .

The rules we have referred to do not allow the president of a corporation to occupy such a position. For him to do so is a violation or disregard of the obligations incident to the fiduciary or *quasi* trust relation that he occupies. It matters not that the officer is entirely free from any intent to injure the corporation in the slightest degree, acting in fact in the highest good faith throughout, or that his actions really advantage the corporation. No inquiry may be made into such matter. The. inquiry in this regard is stopped when the relation is disclosed. (See *Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 365, 366, [104 Am. St. Rep. 42, 78 Pac. 550].)

It is further to be noted that by acquiring and retaining this interest in the net profits of Pratt & Grigsby, Mr. Briggs clearly placed himself in a position that was antagonistic, so far as pecuniary interest was concerned, to the interests of those who were to subscribe for the stock, for it immediately became to his pecuniary interest to assist in obtaining from them as high a price as possible for the stock subscribed for, over and above the fourteen dollars per share that was to go to the corporation, the net profits of Pratt & Grigsby depending entirely upon the amount over fourteen dollars per share for which the stock was disposed of. We do not see how it can be seriously questioned that the president of a corporation which is actually engaged in obtaining the subscriptions to its capital stock necessary under the law to enable it to commence and continue its business, stands in such a relation to those who subscribe and thereby become stockholders that he is absolutely precluded from assuming any such position.

It is a feature of this case materially distinguishing it from the ordinary contract of a going corporation in the matter

of the transaction of its business, that the undertaking of Pratt & Grigsby was in fact simply one of employment to obtain the subscriptions to the capital stock of the corpora-tion.   As we have said, no question is here involved as to the validity of this contract as against the corporation, and we assume its validity.   But conceding that the directors of this corporation engaged in procuring the essential stock sub-scriptions to enable the corporation to commence and continue the business for which it was incorporated, could employ others at the expense of the corporation to assist them in doing this necessary work, upon any such terms as were here agreed upon, we are satisfied that under well settled equitable principles, no director could lawfully make any secret profit for himself in the matter of such subscriptions.   The very first duty of the directors of this corporation was to procure the necessary stock subscriptions to enable the corporation to commence and continue its business.   They accepted this trust when they assumed the office of director, and in the discharge of this trust they were practically ''promoters'' of the corporation.   The obtaining of such subscriptions was practically a part of the formation of the company.   One who engages in such work is known as a promoter, and is subject to the obligations imposed upon promoters.   (See 1 Thompson on Corporations, sec. 415; 1 Clark & Marshall on Corporations, sec. 110; 2 Beach on Private Corpora-tions, sec. 809.)   As said in 1 Thompson on Corporations, section 415, the word ''promoter'' ''involves the idea of exertion for the purpose of floating a company, and also the idea of some duty toward the company imposed by, or arising out of, the position which the so-called promoter assumes toward it.''   It is thoroughly settled that promoters cannot make a secret profit out of the corporation—that they occupy a fiduciary relation to it, and to its stockholders, and have no right to derive any advantage over other stockholders, without a full and fair disclosure of the transaction.   (See 1 Thompson on Corporations, sec. 457; 1 Clark & Marshall on Corporations, sec. 110; 2 Beach on Private Corporations, sec. 814.)   It was said in *Bennett* v. *Havelock Electric Light etc. Co.*, 21 Ont. L. R. 120, [18 Am. & Eng. Ann. Cas. 354]), of a situation somewhat analogous in principle, ''The real offense is the receiving of this money while occupying a

fiduciary position, and the concealing of the benefit received from those whose interests they were bound to protect. It would be well for those who accept positions of public or *quasi* public trust to realize that they cannot, while occupying such positions, receive any personal advantage without the fullest possible disclosure to and assent of all concerned. It has been argued in this case that the defendants are not liable, as they were in fact the only shareholders of the company at the time of the transaction, and because they, as shareholders, assented to what was done. This ignores the fact, that when there is intended to be an invitation to others to come in and take stock, the future shareholders are entitled to the protection of an absolutely independent directorate and to full disclosure of the actual facts. There is no distinction between the position of promoters and directors in this respect; if any can be drawn, it must impose a more stringent obligation upon one occupying the position of director. The principles laid down in the decided cases accord with the dictates of honesty and fair play.'' It is very clear that the attempted delegation by the directors to others of the work of securing subscriptions can make no difference in this regard. Whatever work any of them actually did in that behalf they must be held to have done as directors, in execution of the trust confided to them.

The corporation is entitled, of course, to recover secret profits obtained by a director or promoter by a violation of the obligations resting on him. It is entirely immaterial that the corporation may not have been damaged by the transaction in which they were made. (See *Bird etc. Co.* v. *Hume,* 157 Pa. St. 278, [37 Am. St. Rep. 727, 27 Atl. 750].) Such secret profits belong, in view of the principles we have stated, to the corporation, for the benefit of its stockholders. (See, also, *Farmers & Merchants Bank* v. *Downey,* 53 Cal. 466, [31 Am. Rep. 62] ; *Chandler* v. *Bacon,* 30 Fed. 538; *Paducah etc. Co.* v. *Hays* (Ky), 24 S. W. 237; *Eden* v. *Rigsdales Co.,* 23 L. R. Queen's Bench Div. 368; Cook on Corporations, sec. 650.)

A meaning is sought by counsel for defendants to be attributed to the word ''earned'' as used in the complaint that is not well based. It is claimed substantially that this word imports that the services of Pratt & Grigsby to the corpora-

tion were reasonably and fairly worth the sum of one hundred and eighty thousand dollars. When considered in connection with the context it fairly means no more than that Pratt & Grigsby became entitled *under the terms of the contract* to one hundred and eighty thousand dollars.

The cases cited by learned counsel to the effect that even if there be a violation of the obligations resting on an officer of a corporation, nevertheless the corporation must pay for the value of the thing which it receives, have no application here. The plaintiff corporation is simply seeking to recover such secret *profits* as were made by one of its officers in a transaction wherein he was forbidden to make any such secret profits, and which profits, in view of the rules we have discussed, belong to the corporation.

As has been stated, we are discussing this case upon the assumption, as we must, that the complaint states the facts correctly. It is only fair to state that many of the material allegations of the complaint are denied by the amended answer on file. We simply hold that upon the matters we have discussed, the complaint sufficiently states a cause of action.

It is claimed that the complaint does not state a cause of action in that it does not show the presentation of a proper claim against the estate of deceased. No objection in this regard was made until long after the commencement of this action and until long after the time for the presentation of claims had expired. We think that there is no force in the claim so made. To our minds, the claim presented was based upon the cause of action here asserted and sufficiently showed the nature of plaintiff's demand to give the executors such information as was necessary to enable them to act upon it advisedly. It is not fatal to such a claim, especially in the absence of a demand for further particulars, that it is not drawn with the precision which would render a complaint good against a special demurrer. There is no force in the objection that the claim was not sufficiently verified. The affidavit was by Frederick S. Withington, who deposed that he is the secretary of the claimant corporation and authorized to make the claim on its behalf, and ''that the sum of forty thousand five hundred dollars is justly due the said claimant; that no payments have been made thereof which are not cred-

ited; and that there are no offsets to the same, to the knowledge of said *claimant.*" The statute (Code Civ. Proc., sec. 1494) requires a claim to be supported "by the affidavit of the claimant, or some one in his behalf, that the amount is justly due, that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of the *affiant.*" It is by reason of the use of the word "claimant" where we have italicized it, instead of the word "affiant," that this claim is said to be of no value. *Perkins* v. *Onyett,* 86 Cal. 348, [24 Pac. 1024], is relied on in support of this objection. There the claim was that of an individual, the affidavit being made by another individual on his behalf, and a similar objection was specified among others by the court as being good. Of course such a statement in an affidavit under such circumstances was insufficient. In *Davis* v. *Browning,* 91 Cal. 603, [27 Pac. 937], it was held that a similar affidavit made by an executrix on behalf of an estate of a deceased person was sufficient. The court said: "We think, however, that in this case the 'claimant' and the 'affiant' are the same person, and that the use of the word 'claimant' instead of 'affiant' in the clause referred to in the affidavit is immaterial. It is true that the demand is in behalf of the estate which she represents, and that the moneys that may be received by her will not be her individual property, but she is nevertheless the proper individual to make, and the one who has made, the claim, and to whom the money is to be paid. It would be giving too much attention to mere form and shadow to hold that the affidavit made by her is not a substantial as well as sufficient compliance with the requirements of this section." The claimant here is a corporation, whose only source of knowledge is that of its officers and which can act only through such officers. As suggested in *Scott* v. *Leakes,* 9 Cal. App. 516, [99 Pac. 731], the affidavit is in effect one not made by a stranger on behalf of the corporation, but one made by the corporation itself through one of its authorized officers. We think that the statements in the affidavit, made as they are by one who shows that he is the secretary of the corporation, and therefore in charge of the corporate books and records, are substantially equivalent to a statement by the deponent that the matters stated are true of his own knowledge.

We find no other matter in the briefs requiring discussion.

The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Sloss, J., and Shaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., and Melvin, J., dissented from the order denying a hearing in Bank.