## GALLAGHER v. PACIFIC AMERICAN CO.
### No. 8744.

Circuit Court of Appeals, Ninth Circuit.
May 27, 1938.

Ware & Ware, of Chico, Cal., for appellant.

Stephen R. Duhring, of San Francisco, Cal., and Fred E. Pettit, Jr., of Los Angeles, Cal. (Chickering & Gregory, of San Francisco, Cal., and Macdonald, Schultheis & Pettit, of Los Angeles, Cal., of counsel), for appellees.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

As a stockholder of California-Western States Life Insurance Company, a California corporation (hereafter called California-Western), appellant, a citizen of California, filed a bill of complaint against

Pacific American Company, Limited, a Delaware corporation (hereafter called Pacific American), praying judgment for and on behalf of California-Western in the sum of $75,000. California-Western was joined as a defendant. The bill was twice amended. Pacific American moved to dismiss the second amended bill (hereafter called the bill), on the ground, among others, that the facts therein stated were not sufficient to constitute a cause of action. The District Court granted the motion and dismissed the bill. Appellant seeks reversal.

The bill alleges that on or about June 10, 1931, California-Western entered into a contract with Tucker Hunter Dulin & Company, a corporation (hereafter called Hunter Dulin), a copy of which contract is attached to and made a part of the bill. The contract provided that on or before June 10, 1931, California-Western would make an offer to the stockholders of Western States Life Insurance Company, a corporation (hereafter called Western States), a copy of which offer was set out in the contract.

The offer was that, if on or before October 1, 1931, certificates representing at least 66,667 shares of Western States' capital stock were deposited with a designated trust company, properly endorsed for transfer to California-Western, California-Western would on or before October 1, 1931, pay to the trust company, for the account of each depositing stockholder, $40 for each share of stock so deposited, and would deliver to the trust company, for the account of such stockholder, a certificate of stock in California-Western, such California-Western certificate to be for one-half the number of shares represented by the Western States certificate deposited by such stockholder, and that each such stockholder would be given the privilege of subscribing for additional stock of California-Western, at $40 a share, upon the basis of two such shares for every five shares of Western States stock so deposited.

The contract provided that Hunter Dulin would use its best efforts to secure the deposit, prior to October 1, 1931, of certificates representing as many as possible of Western States' outstanding shares of stock, and that, if certificates representing 66,667 or more of said shares were so deposited, California-Western would, upon deposit thereof, pay to Hunter Dulin, for its services in securing such deposit, the sum of $200,000.

The bill alleges that the offer set out in the contract was made to all Western States stockholders, one of whom was Pacific American; that, pursuant thereto, 95,529¼ shares of Western States stock, including 10,051 shares owned by Pacific American, were deposited with the trust company and purchased by California-Western on or about August 19, 1931; and that, on or about August 25, 1931, California-Western paid Hunter Dulin $200,000, in accordance with the contract.

The bill alleges that Pacific American was unwilling to, and would not, sell its Western States stock for the consideration specified in California-Western's offer, but demanded, in addition thereto, a further consideration of $75,000; that, to induce it to sell its stock, Hunter Dulin "secretly" agreed to pay such additional consideration; that Pacific American was thereby induced to, and did, sell its stock to California-Western; that thereafter, in accordance with their agreement, Hunter Dulin "secretly" paid Pacific American $75,000 from and out of the $200,000 which Hunter Dulin had received from California-Western; and that the $75,000 was and is retained by Pacific American.

The bill states that receipt and retention of the $75,000 by Pacific American constituted a fraud on California-Western. This statement—a mere conclusion of the pleader—is unsupported by any allegation of fact. So far as can be ascertained from the bill, it was lawful and proper for Pacific American to receive and retain the $75,000. The fact, if it be a fact, that Pacific American got more for its stock than other stockholders[1] got for theirs, is immaterial. Pacific American was not obliged to sell its stock at any price. Much less was it obliged to sell at the price which California-Western had offered, and which some of the stockholders accepted. Compare Ryder v. Bamberger, 172 Cal. 791, 158 P. 753. Pacific American had the right to demand a higher price and, if its demand was complied with, as it was, it had the right to receive and retain such higher price.

Even if the receipt and retention of the $75,000 by Pacific American were wrongful and unlawful, that alone would not entitle

---

[1] Pacific American was not an officer, agent, director or promoter of Western States, but was merely a stockholder.

There was, therefore, no confidential or fiduciary relationship between it and the other stockholders.

California-Western, or any one on its behalf, to maintain this suit. To maintain the suit, it would be necessary to show some injury to California-Western. The bill shows no such injury. On the contrary, it appears that California-Western got what it bargained for, at the price it agreed to pay—no more, no less—and was in no way injured by the acts complained of. The $75,000 received by Pacific American was received from Hunter Dulin, not from California-Western. Pacific American got nothing from California-Western except the per share consideration specified in California-Western's offer. The fact that the $75,000 was paid to Pacific American from and out of the $200,000 which Hunter Dulin had received from California-Western, is immaterial. The $200,000 was Hunter Dulin's money. What Hunter Dulin did with it was no concern of California-Western.

The fact that the transaction between Hunter Dulin and Pacific American was a "secret" transaction, is without significance. Since the transaction did not concern California-Western, there was no reason for disclosing it to California-Western, either before or after it occurred. There was no confidential or fiduciary relationship between Pacific American and California-Western. Such relationship did not, as claimed by appellant, result from the fact that Pacific American's agent, Nion R. Tucker, was a director of California-Western. Nion R. Tucker was not Pacific American. He was merely its agent. Pacific American was not an officer, agent, director or promoter of California-Western. Hence, the cases cited by appellant[2]—dealing with officers, agents, directors and promoters—are not in point.

The bill states that, by the transaction between Hunter Dulin and Pacific American, Pacific American was enabled to subscribe for California-Western stock on terms more favorable than those accorded to other Western States stockholders. This statement—a mere conclusion of the pleader—is obviously untrue. The terms on which Western States stockholders, including Pacific American, could subscribe for California-Western stock were specified in the written offer mentioned above. These terms could not be, and were not, changed or modified by the transaction complained of.

■ Upon the facts stated in the bill, California-Western could maintain no action against Pacific American. As a stockholder suing on behalf of California-Western, appellant has, of course, no better right. Laughner v. Schell, 3 Cir., 276 F. 241, 245. The motion to dismiss was properly granted.

■ Appellant's motion for leave to file a third amended bill was addressed to the trial court's discretion, the exercise of which, in the absence of abuse, is not reviewable. Truckee River General Electric Co. v. Benner, 9 Cir., 211 F. 79, 81; Hinman v. Pacific Air Transport, 9 Cir., 84 F.2d 755, 759. There is here no showing of abuse.

Decree affirmed.

[2] Ex-Mission Land & Water Co. v. Flash, 97 Cal. 610, 32 P. 600; Burbank v. Dennis, 101 Cal. 90, 35 P. 444; Lomita Land & Water Co. v. Robinson, 154 Cal. 36, 96 P. 10, 18 L.R.A.,N.S., 1106; Western States Life Ins. Co. v. Lockwood, 166 Cal. 185, 135 P. 496; Id., 173 Cal. 734, 161 P. 498; California-Calaveras Mining Co. v. Walls, 170 Cal. 285, 149 P. 595; Munson v. Fishburn, 183 Cal. 206, 190 P. 808; Victor Oil Co. v. Drum, 184 Cal. 226, 193 P. 243; San Leandro Canning Co. v. Perillo, 84 Cal. App. 627, 258 P. 666.