HERBERT E. NELSON AND WALLACE R. NELSON, APPELLANTS, v. SIERRA CONSTRUCTION CORP., R K R CONSTRUCTION COMPANY, A NEVADA CORPORATION, W. E. KOERWITZ, AND A. P. RAPONE, RESPONDENTS.

No. 4364

August 24, 1961                              364 P.2d 402

(See also 76 Nev. 257, 352 P.2d 125.)

*Morton Galane,* of Las Vegas, for Appellants.

*Samuel S. Lionel* and *Dwight B. Claar, Jr.,* of Las Vegas, for Respondents R K R Construction Company, W. E. Koerwitz, and A. P. Rapone.

# OPINION

By the Court, BADT, C. J.:

The amended complaint in the court below presented a stockholders' derivative action in three counts. The first two counts sought relief from one Charles L. Horsey, Jr., and one Fred L. Allred, the former being a codirector with Koerwitz and Rapone of Sierra Construction Corporation, and the third count sought relief against R K R Construction Company, Koerwitz, and Rapone. An order of severance was made whereunder this action proceeded against R K R, Koerwitz, and Rapone. A separate action is now pending against Horsey and Allred. Counts 1 and 2 therefore have been dropped, but Count 3 incorporates in such count paragraphs 1, 2, and 3 and paragraphs 10, 11, and 12 of the first count. It omits, however, paragraphs 15 and 16 of Count 3 of the original complaint, the significance whereof is later discussed. Some question has arisen whether paragraphs 1, 2, 3, 10, 11, and 12 of the first count remain incorporated in the present third count. We are satisfied that the presentation to the district court on sundry motions pertaining to the third count assumed that the said paragraphs of the first count, thus incorporated by reference, were retained in the third count.[1] We hold for the purposes of this opinion that such paragraphs remained included in the third count, the only count with which we are here concerned.

This count is asserted pursuant to Rule 23(b) NRCP which permits a derivative or secondary action by shareholders of a corporation.[2] It alleges that Koerwitz and Rapone, being directors and officers of Sierra Construction Corporation, formed R K R Construction Company which, since May 1, 1959 has been conducting a general

---

[1] It is impossible to conclude from the wording of the trial court's order granting the motion to dismiss, hereinafter discussed, whether such court made its ruling with or without the inclusion of such paragraphs in the third count.

[2] NRCP 23(b): "Secondary Action by Shareholders. In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly

contracting business, using the time, facilities and equipment of Sierra Construction Corporation to operate their own construction business. The relief they seek under this count is: "1. That a constructive trust be impressed on the stock of defendants Koerwitz and Rapone in R K R Construction Company and the assets of defendant R K R Construction Company for benefit of the corporation Sierra Construction Corp." 2. For costs and attorney fees, and 3, for further relief.

The motion to dismiss as to R K R, Koerwitz, and Rapone was granted on the ground that the amended complaint failed to state a claim against said parties under the requirements of Rule 23 (b) NRCP, and the amended complaint as to them was ordered dismissed for said reasons, with prejudice.

Two errors are assigned: "1. That the court erred in holding that the [amended] complaint failed to state a claim against said parties upon which relief could be granted. 2. That the court erred in holding that the [amended] complaint should be dismissed with prejudice."

1. In determining whether or not the amended complaint stated a claim upon which relief could be granted, we turn to the allegations in question. Paragraphs 1, 2, and 3, incorporated by reference into the third count, recite the ownership of 1,200 shares of the stock of Sierra by appellant Herbert E. Nelson, and the ownership of 1,200 shares of said stock by Wallace R. Nelson, by reason of an agreement by Sierra to sell such shares for a total price of $5,000 on each issue, of which $3,750 remained unpaid by Herbert on his stock and $3,800 by Wallace on his stock, with an agreement to extend time for payment of the balance. Paragraphs 10, 11, and 12, incorporated by reference into the third count, contain

be asserted by it, the complaint shall be verified by oath and shall aver that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

allegations apparently made in support of the requirements of Rule 23(b) NRCP with reference to the necessary allegations in a derivative action. Such allegations are substantially as follows: That in a five and one-half year period commencing in June 1953 Sierra had done a construction business of seven and one-half million dollars, embodied in 54 projects, and earning a profit of $250,000; that during this period the Nelsons accepted minimum salaries but that Herbert E. Nelson, as president, was authorized on April 25, 1958 to pay himself and Wallace R. Nelson bonuses of $8,000 each and to pay similar bonuses to two other directors; that the bonuses were paid to the other directors but not to the Nelsons, the Nelsons being, on the contrary, removed from office. These allegations, of course, establish, at most, a right of action in each of the Nelsons against the corporation, either in contract or in quantum meruit. It is further alleged that, on January 27, 1959, Sierra tentatively resolved to complete present jobs under contract and to provide later for formal resolution for the liquidation of assets and final dissolution; and that, contingent upon the adoption of a formal resolution for liquidation and dissolution, Sierra tentatively resolved that the present members of the corporation "could form other construction businesses"; that, starting about April 15, 1959 Koerwitz and Rapone, with defendant Horsey and directors McColley and Kraft, terminated Herbert E. Nelson's position as president and director and Wallace R. Nelson's position as vice president and director, and substituted Koerwitz as president, who failed to pay the $8,000 bonus to each of the Nelsons although theretofore authorized to do so; that Sierra then commenced an action against the Nelsons for the balance of the subscription price of their stock, and levied attachment against other assets owned by them; that, in place of taking steps toward liquidation and final dissolution of Sierra, the directors contracted for new construction work through a newly formed corporation in which they were directors and stockholders, namely R K R Construction Co., and operated R K R "by the use of the time, facilities and equipment of

Sierra"; that Koerwitz and Rapone and the remaining directors convened a meeting for October 13, 1959 in response to a written demand by the Nelsons that action be commenced against Horsey by reason of certain transactions by him which were set out in the first two counts and, as noted above, segregated from the present action; that at such meeting they selected an attorney who earlier that day had filed suit against the Nelsons "for the purpose of revoking control which the plaintiffs [the Nelsons] allegedly had to certain assets in which the defendant Horsey and the other directors had a proprietary interest and which had an approximate value of $250,000, and causing the service of process on [the Nelsons] at the very meeting which was purportedly called to consider a suit by Sierra against defendant Horsey." It is further alleged that, at the same meeting, they authorized steps to be taken to secure the stock certificates theretofore issued in the names of the Nelsons but which were still in escrow. It is then alleged that, although the Nelsons on September 21, 1959 served a written demand on the managing directors of Sierra for action against Horsey, they withdrew such demand at the meeting of October 13, 1959 because of their acquisition of information in the meantime of the refusal of the directors to take steps for dissolution and, instead, bidding for construction work through R K R as above alleged. It is then asserted: "It was not necessary for the plaintiffs to continue with said demand and the plaintiffs have made no further effort to secure the action desired by the managing directors of Sierra against the defendant Horsey for the combination of reasons [above] set out with particularity." The final allegation shows the ownership by Horsey, McColley, Kraft, Koerwitz and Rapone of an aggregate of 68½ percent of the capital stock of Sierra and the provisions in the bylaws of Sierra that a quorum of 75 percent of stock is necessary for corporate actions;[3] that "for the reasons set out hereinabove the plaintiffs

[3]This allegation was contained in Par. XIII of the first count, which was *not* incorporated into the third count by reference. However, it is mentioned here, as both parties argued it orally and in their briefs.

have made no effort to secure the action desired against the defendant Horsey by the stockholders of Sierra Construction Corp."

Such is the entire statement in support of the derivative action. At this point it should be further noted that, in such amended complaint, the plaintiffs omitted entirely paragraphs numbered 15 and 16 of their original complaint. These paragraphs referred again to Horsey as a director, alleged a breach by Horsey of his fiduciary duty as a director, and that corporate action could be taken only by three directors, which could be commenced only by the votes of Rapone and Koerwitz, and that none of these directors could vote disinterestedly in the interest of Sierra on the question of a proposed suit against Horsey and a proposed suit against Koerwitz and Rapone; that the bylaws required a majority for corporate action, namely, three out of five directors, and it was therefore impossible for a quorum of disinterested directors to be present and vote on the demand for legal action against Horsey and against Koerwitz and Rapone.

The original paragraph 16, omitted as aforesaid from the amended complaint that was before the lower court and is now before this court, alleged immediate and irreparable injury to Sierra; that it had performed a gross of over $3,000,000 during the fiscal year ending April 30, 1959 with a profit of $90,000; that the conduct of Koerwitz, Rapone, and R K R "threatens to divert a substantial value of construction contracts from Sierra Construction Corporation and threatens to impair and destroy the good will of Sierra Construction Corporation."

We repeat that the allegations thus contained in the original complaint were, as the district court must have concluded and as we must conclude, deliberately and advisedly omitted from the amended complaint. The asserted cause of action against Horsey, as noted, was removed from the present action, leaving only Koerwitz, Rapone, and R K R. We must then find support for an

action by Sierra against these defendants before a derivative action can lie, as the stockholders' derivative suit on behalf of the corporation derives its cause of action out of an invasion of the rights of the corporation, and it follows that, if the corporation itself has no cause of action, a stockholder cannot sue on its behalf. Gallagher v. Pacific American Co., 9 Cir., 97 F.2d 193, 195; Linker & Herbert, Inc. v. Marshall, D.C., 133 F.Supp. 148; Cohen v. Beneficial Industrial Loan Corporation, D.C., 69 F.Supp. 297, 301; 18 C.J.S., Corporations, sec. 559, p. 1274. Yet the allegations contained in the amended complaint do not indicate that any rights of the corporation have been invaded, resulting in damage to it. The allegation that R K R is using "the time" of Sierra conveys no meaning. The allegation that R K R is using the facilities and equipment of Sierra contains no statement that such use is without consideration or without an entirely adequate consideration. That arrangement, so far as appears, might afford great profit to the corporation and be preferable to winding up and liquidation and possible forced sale of its assets. For all that appears, the managing directors of Sierra have not only used their best judgment in their arrangement with R K R but such judgment may have been fully justified and resulted in profit to Sierra. The amended complaint is devoid of any statement indicating that the Sierra equipment thus used by R K R might or would depreciate in value or that Sierra was not fully protected in its arrangement with R K R. From the allegation of the arrangement with R K R, in place of the winding up and dissolution of Sierra, the conclusion can as well be drawn that this was far more to the benefit of the stockholders of Sierra than it would have been to carry out the original tentative plan to dissolve. We find no allegation of fraud, no allegation of bad faith, no allegation of damage, no allegation that a legal wrong had been committed. Sutton v. Eastern Viavi Co., 7 Cir., 138 F.2d 959, 960; Mebco Realty Holding Co. v. Warner Bros. Pictures, Inc., D.C., 44 F.Supp. 591, 592; Linker & Herbert, Inc. v. Marshall, D.C., 133 F. Supp. 148, 150. We are forced to the conclusion that the amended complaint failed to state a claim on which relief could be granted.

2. We are however confronted with the proposition that, as the motion to dismiss was based on the provisions of Rule 23 (b) and on the particular ground that the amended complaint did not state a cause of action for the specific reasons that it did not show that the plaintiffs were stockholders and did not show with particularity the efforts of the plaintiff to secure action from the managing directors and, if necessary, from the stockholders and, as the order dismissing the amended complaint was based "on the grounds stated in the motion," the consideration of this appeal must be limited to such specific action of the court upon such specific grounds. If we are thus limited, under this theory, we should be compelled to consider at length the two questions thus raised in the motion and then, if we should find that the allegations supported the fact that the plaintiffs were stockholders and further supported the fact that demand on management or on the stockholders was unnecessary under the allegations made, we should further be compelled to reverse the trial court even though we were fully convinced that the amended complaint did not otherwise state a claim on which relief could be granted. We find no merit in this argument. Rule 23 (b) does indeed recite certain things necessary to stating facts essential to support a secondary action by stockholders. Absent such necessary allegations, no *claim for relief* has been stated. Thus, Rule 23 (b) is definitely tied to Rule 12 (b) (5) under which failure to state a claim upon which relief can be granted is subject to a motion to dismiss. Therefore it would be idle to discuss the necessary requirements for a secondary action under Rule 23 (b) if, in other respects, the amended complaint fails to state a claim upon which relief can be granted. In the latter event we simply do not reach the additional requirements of Rule 23 (b). It would be just as futile for us to examine the two points raised under Rule 23 (b) and then *to determine* perchance that the complaint should not have been dismissed under that section even if it definitely appears that the judgment of dismissal was correct under Rule

12(b)(5). We have many times upheld the rule in this state that a correct judgment will not be reversed simply because it was based on a wrong reason. Goldsworthy v. Johnson, 45 Nev. 355, 363, 204 P. 505, 507; see also Lemel v. Smith, 64 Nev. 545, 552, 187 P.2d 169, 172; Merritt v. District Court, 67 Nev. 604, 609, 610, 222 P.2d 410, 412. Logically, the same rule should be applied to the present appeal.

3. Appellants contend, however, that it was error for the court to grant the motion to dismiss without giving plaintiffs below an opportunity to amend. We should first note that plaintiffs had amended once, and that by such amendment they had deleted from their original complaint their allegations of irreparable injury and of the impairment and destruction of the good will of Sierra. The granting of leave to amend is largely a matter of discretion in the trial court and failure to grant leave to amend will not be held to be error in the absence of an abuse of such discretion. 3 Moore's Federal Practice, 2d Ed., p. 833; Heay v. Phillips, 9 Cir., 201 F.2d 220, 222; Young v. Garrett, 8 Cir., 159 F.2d 634. Nowhere in the record is there any suggestion that plaintiffs could have amended by alleging additional facts to support their cause of action. The nearest approach to this would be in the paragraphs of the original complaint which were deliberately omitted from the amended complaint. Nor in the briefs or oral argument to this court was any suggestion made that the derivative action could be supported by allegation of additional facts if opportunity to amend further were given. We find no abuse of discretion in the trial court's action.

Affirmed, with costs.

MCNAMEE, J., concurs.

THOMPSON, J., concurring:

In ordering dismissal of the amended complaint, the district court found that plaintiffs had failed to aver legally sufficient reasons excusing them from attempting to secure the action they desired from the corporate

directors as required by NRCP 23(b). I believe the lower court was correct. Though I agree with the majority opinion that the amended complaint is defective in the other respects as therein specified, I would affirm the lower court for the reason stated above, because that was the point to which counsel directed their briefs and arguments on appeal.