## HOTEL RIVIERA, INC., Appellant, v. EDWARD TORRES, Respondent.

No. 12370

August 31, 1981                    632 P.2d 1155

*Lionel Sawyer & Collins,* and *Dennis L. Kennedy,* Las Vegas, for Appellant.

*Morton R. Galane,* Las Vegas, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

Declaratory judgment was entered in favor of Torres declaring that a claimed agreement by Torres not to compete with

Riviera was unreasonable and unenforceable. Riviera appeals; we affirm on grounds different from those expressed by the trial court.

Riviera claims that the written employment contract between the parties, particularly Section 4.1(b),[1] expresses an agreement on the part of Torres that he will not compete with Riviera in Nevada for the rest of his life.

After completing his employment term Torres filed suit seeking a court declaration that he was not bound in the manner claimed by Riviera. The trial court ruled that under the circumstances of this case an agreement to refrain from competition for life was unreasonable and unenforceable after January 1, 1979 because it was unnecessary to protect the legitimate business interests of Riviera. *See* Hansen v. Edwards, 83 Nev. 189, 426 P.2d 792 (1967).[2]

The proceedings below and in this appeal have been based on the assumption that the written employment contract contained a post-employment agreement by Torres not to compete with Riviera during his lifetime. The question litigated was whether or not such an agreement was reasonable.

We have carefully scrutinized the employment contract and conclude that it contains no post-employment agreement not to compete. The question of reasonableness is therefore irrelevant.

Whatever might have been the intention of the parties, a reading of the unambiguous terms of the employment contract shows clearly that the post-employment restrictive covenant, taken for granted by counsel and the court below, does not exist.

---

[1]The pertinent part of Section 4 of the employment contract reads as follows:

4. *Covenant Not to Compete*

4.1 The provisions of this section 4 shall be applicable during the following periods:

(a) The Employment Period;

(b) the period, if any, during which Torres is being compensated pursuant to Section 2.4 hereof; and

(c) for a period of five (5) years after termination of the Employment Period, in the event that the Employment Period shall be terminated by reason of Torres' breach of this Agreement or other than as specifically permitted by this Agreement.

[2]An agreement by an employee not to compete with an employer after termination of employment is a restraint of trade and contrary to the public policy of this state. Such agreements will not be enforced by the courts unless the terms of restriction on employment are reasonable. *Id.*

"[T]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs,—not on the parties' having *meant* the same thing but on their having *said* the same thing." Holmes, *The Path of the Law,* 10 Harv.L.Rev. 457, 464 (1897), quoted in R. Aldisert, *The Judicial Process* 32 (1978). If the parties to the employment contract had wished to restrict Torres from engaging in gaming in Nevada for the rest of this life, they should have said so. They most certainly did not.

Section 4 of the contract, captioned "Covenant Not to Compete," imposes in subsections 4.1(a), (b) and (c) three different time periods during which Torres is required to refrain from competitive activity. Two of the specified periods have expired; and the only remaining possible period of competitive prohibition is that appearing in 4.1(b), which prohibits competition by Torres for, "the period, if any, during which Torres is being compensated pursuant to Section 2.4 hereof."[3]

The only question, then, is whether there has been any period during which Torres was being compensated pursuant to Section 2.4 of the contract. The answer to the question is, "No." The "period, if any," is nonexistent, for, as all agree, Torres at no time has been "compensated pursuant to Section 2.4 hereof." Consequently the contract does not contain a post-employment prohibition against competition for the lifetime of Torres nor for any other "period" provided for in Section 4.1(b) of the employment contract.

Although reading of the contract makes it quite clear that the 4.1(b) restrictive covenant does not become operative absent Torres' being compensated under Section 2.4, we gave counsel an opportunity to brief the point as it had not been considered either at trial or in the briefing and oral argument of this appeal.

In its supplemental memorandum Riviera addressed this point by saying it did not matter that Torres was not compensated pursuant to Section 2.4. Once Torres completed his

---

[3]Section 2.4 of the employment contract provides as follows:

"2.4 If Torres' employment hereunder is terminated on or after December 31, 1978 (other than by death or for cause), Riviera shall, in consideration of Torres' obligation under Section 4 hereof, pay to Torres retirement compensation for the rest of his life at the rate of $25,000 per annum plus an additional $5,000 per annum for each full year after 1978 during which Torres is a full time employee of Riviera, provided, however, that the maximum amount of such retirement compensation shall, notwithstanding the length of Torres' service as a full time employee, be $50,000 per annum. The retirement compensation shall be paid in equal monthly installments."

employment term, Riviera was required to pay him 2.4 retirement compensation; therefore, argues Riviera, Torres is required to accept the compensation and the attendant obligation not to compete for "so long as Riviera continued to make the payments of $25,000 per year."[4]

To begin with, Section 2.4 does not *say* that if Torres completes his employment term a new situation arises in which Riviera is compelled to pay retirement benefits and Torres is required to accept benefits and thus be obligated not to compete for "so long as Riviera continued to make payments." What the parties did say is that Torres would be bound only during such "period, *if any,* "[5] that Torres was actually "being compensated."

Further, it would be illogical to accept such a position. It offends reason to interpret the contract to mean that mere completion of his employment term automatically locked Torres into a post-employment non-competitive agreement for life or for "so long" as Riviera wanted to pay him.

The only logical meaning of the language in Section 2.4 that Riviera "shall" pay retirement benefits if Torres completes his employment term is that Torres' performance entitled him to elect (as in the case of comparable employee benefits such as stock options) to retire and to receive benefits if he were willing to accept also the obligation under Section 4; that is, the covenant not to compete.

To say that Torres becomes absolutely bound by mere completion of his employment term is to say, first, that he would be irrevocably bound for life if he performed his contract, but would be bound for only five years (Section 4.1(c)) if he violated the contract; and, second, that he would be bound for life to accept $25,000 per year in exchange for his proven earnings in Nevada gaming in excess of $500,000 per year. Such an interpretation, then, is both linguistically and logically unacceptable.

What the parties *said* in the employment contract is clear. If Torres completed his employment term, he would become eligible to receive (but not compelled to accept) retirement compensation for the rest of his life, "in consideration" of his

---

[4]Appellant's Supplemental Memorandum, p. 4.

[5]Court's emphasis. The phrase "if any" may be taken as an indication that the parties understand the contingency of this part of the covenant's not going into effect. It would not, by the terms of the contract, go into effect if Torres failed to complete his employment term or if he was not "compensated pursuant to Section 2.4."

continued "obligation under Section 4," not to compete. That mere performance by Torres of his contractual obligation to complete the employment term irrevocably bound him not to engage in gaming in Nevada is not only unsaid but unsound from the standpoint of logic and reason.

The trial court has declared the claimed covenant not to compete to be "unenforceable." If a decision below is correct, it will not be disturbed on appeal even though the lower court relied upon wrong reasons. Nelson v. Sierra Constr. Corp., 77 Nev. 334, 342–43, 364 P.2d 402, 406 (1961); Burgert v. Union Pac. R. R., 240 F.2d 207, 212 (8th Cir. 1957). The trial court's result is correct; so we will affirm the declaratory judgment.

Affirmed.

GUNDERSON, C. J., and BATJER and MOWBRAY, JJ., concur.

MANOUKIAN, J., concurring:

I agree with this court's determination that Torres is not bound under the purported prohibitory covenant. I also agree that we should not disturb on appeal a correct decision of a lower court even if it is based on erroneous grounds. Nelson v. Sierra Constr. Corp., 77 Nev. 334, 343, 364 P.2d 402, 406 (1961). However, in affirming the declaratory judgment, I believe it is imperative to identify the legal theory upon which the case should have been decided. It is particularly important to do so here, because our decision will reach well beyond the instant case. This state's main industry is gaming and there is intense and sometimes unwholesome competition among major establishments and among key gaming employees. The significant public interest in this case does not determine its outcome, but such interest does warrant identification of the dispositive legal theory.

The Riviera and Torres entered into an employment contract under which he was to serve as Riviera's chief operating officer for five years. Prior to the expiration of the employment period, Torres learned that the contract he had signed apparently contained a lifetime post-employment covenant not to compete. In the final year of Torres' employment, Riviera offered him subsequent employment, however, the two parties could not agree on terms. After completing his five year commitment, Torres terminated his employment.

During the trial, the court assumed that the employment contract contained a lifetime post-employment prohibition against competition. Based upon this assumption, the trial

judge ruled that the covenant not to compete was unreasonable and unenforceable.

An agreement by an employee not to compete is generally considered in restraint of trade and therefore unenforceable, unless reasonable in scope and breadth. Ellis v. McDaniel, 95 Nev. 455, 458, 596 P.2d 222, 224 (1979); Hansen v. Edwards, 83 Nev. 189, 191, 426 P.2d 792, 793 (1967). "[P]ost employment anti-competitive covenants are scrutinized with greater care than are similar covenants incident to the sale of a business." *Ellis, supra,* at 459, 596 P.2d at 224.

As the majority notes, however, the trial court's interpretation of subsection 4.1 as creating a life-time prohibition against Torres from competition with the Riviera was erroneous, and thus, we are not required to assess the reasonableness of the covenant.

It is important to point out that the trial court's error was its failure to perceive the conditional nature of the contract provision in question. Generally, provisions of a contract will be construed as mutually dependent and concurrent promises and not as conditions precedent, unless the language "plainly requires" the latter construction. Rubin v. Fuchs, 459 P.2d 925, 928 (Cal. 1969). The language of subsection 4.1 explicitly provides that the non-competitive provision of the contract is effective only during "the period, if any," in which Torres is receiving compensation pursuant to section 2.4.[1] The non-competitive clause contains language that is clearly prefatory to any liability. Specifically, the terms made Torres' election of retirement compensation a condition precedent to his being bound under the covenant not to compete. Torres chose not to receive such benefits and therefore was not bound by the covenant because there was no period of time "during which Torres [was] being compensated pursuant to Section 2.4."

I agree that appellant's remaining contentions are without merit, and concur in the result affirming the declaratory judgment.

---

[1]Section 2.4 essentially provided that Torres could receive a $25,000 retirement annuity upon the completion of his employment with Riviera.