ROBERT BEENSTOCK, ROGER J. CHIUPPI, ROBERT D. BENSON; RUSSELL STONE, JR.; LAWRENCE CYGANEK AND KAY TRICOLI, Appellants, v. VILLA BOREGA MOBILE HOME PARKS; MOBILE HOME PARKS WEST; MARJORIE INVERSON; WILLIAM IVERSON, Respondents.

No. 21202

December 26, 1991 823 P.2d 270

*Leslie Mark Stovall*, Las Vegas, for Appellants.

*Jolley, Urga, Wirth & Woodbury*, Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

In 1980, respondents (landlords) opened a 293-space mobile home park in Las Vegas, Nevada. The landlords offered new residents promotional long-term leases of three to five years in duration, featuring predetermined rental increases and rents below those in comparable spaces in other parks in the Las Vegas area (market rate). Tenants holding long-term leases would become month-to-month tenants when their leases expired. Based on a slow adjustment policy, over a period of time, these month-to-month tenants eventually would be paying the market rate.

As of July 1, 1987, approximately one hundred and forty-seven

promotional leases where still in effect, and rents charged to tenants whose promotional leases had expired varied from $32 to $129 per month below the market rate. In the fall of 1987, the landlords issued month-to-month tenants notice of rent increases. These increases varied from tenant to tenant and were consistent with the park policy of taking into consideration the desirability of the space rented, as measured by its size, configuration, location, and accessibility to recreation facilities. In October of 1987, as a result of these notices, residents filed a complaint with the Division of Manufactured Housing (Division).

Under the law as it existed before July 1, 1987, the landlords were permitted to increase rental rates of month-to-month tenants upon ninety days notice, so long as the new rental rate applied in a non-discriminatory manner to tenants who were "similarly situated." Effective July 1, 1987, however, NRS 118B.150(1)(a) was amended to require rental increases to be "the same amount for each space in the park."[1] The Division found that the landlords' rental increase notices violated NRS 118B.150(1)(a), because the increases were not the same amount for each month-to-month tenant. Consequently, the landlords withdrew the rental increase notices and served all month-to-month tenants with a notice that their rent would be increased by $70 per month, effective April 1, 1988. This amount represented the median between the highest and the lowest rent discrepancies from the market rate. This approach, however, left certain month-to-month tenants paying rent above the market rate.

Also as a result of the Division's decision, the landlords accelerated their plan to begin offering long-term leases. In January of 1988, they began offering ten-year leases to those month-to-month tenants whose promotional long-term leases had

---

[1]At the time of the complaint, NRS 118B.150(1)(a) stated:

The landlord or his agent or employee shall not:
1. Increase rent or additional charges unless:
(a) The rental increase *is the same amount for each space in the park,* except that a discount may be selectively given to persons who are handicapped or who are 62 years of age or older, and any increase in additional charges for special services is the same amount for each tenant using the special service.

(Emphasis added.) This statutory provision was amended again in 1991 to state:

The landlord or his agent or employee shall not:
1. Increase rent or additional charges unless:
(a) The rental increase *applies in a uniform manner to mobile homes or lots of the same size,* except that a discount may be selectively given to persons who are handicapped or who are 62 years of age or older, and any increase in additional charges for special services is the same amount for each tenant using the special service.

(Emphasis added.)

expired. For tenants whose rent was below market rate, those leases provided for gradual rent increases over an extended period until the rents equaled the market rate, with cost of living adjustments thereafter, based on a formula set forth in the lease. The landlords distributed the lease to all month-to-month tenants for review and held six formal meetings over a six-month period to discuss and explain the lease to the tenants. Although the tenants did not attend these meetings, they submitted a list of questions and concerns. After the lease was modified and again distributed to all month-to-month tenants, certain tenants contacted the Division and were advised that NRS 118B.150 did not apply to the lease because the lease was a long-term contract negotiated between the parties.

On March 28, 1988, sixteen tenants filed a complaint against the landlords, alleging that the rent adjustment under the long-term leases violated NRS 118B.150(1)(a) because it did not afford the same rent increases to all residents of Villa Borega. The tenants sought entry of a declaratory judgment as to the rights, duties, and responsibilities of the parties with respect to the notice of the rent increase, the threatened rent increase, and the lease and rent assistance program.

The landlords filed a motion for summary judgment. On November 10, 1988, the district court dismissed the tenants' claims regarding most sections of Chapter 118B of Nevada Revised Statutes. The only issue remaining for trial was whether NRS 118B.150(1)(a) applies to long-term leases and, if so, whether it is constitutional as applied to this case. The court ruled that although NRS 118B.150(1)(a) applies to long-term leases, the statute unconstitutionally violates the due process clause, as it applies to the facts of this case.

Although the district court's decision was based upon the constitutionality of the 1987 amendment to NRS 118B.150(1)(a), we may not consider that issue in this opinion because we conclude that this statute does not apply to long-term leases. This court may affirm a decision of the lower court based upon an issue that was not found to be the deciding issue below. Hotel Riviera, Inc. v. Torres, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981).

The landlords argue that NRS 118B.150(1)(a) is inapplicable to long-term leases based upon (1) the statutory goal of protecting month-to-month tenants, and (2) the statute's interpretation by coordinate branches of government. With respect to the purpose of NRS 118B.150(1)(a), the landlords argue that the purpose of this statute was to protect month-to-month tenants. They note that

NRS 118B.150(1)(b) requires a ninety-day notice of the rent increase, and that this subsection also does not expressly exempt long-term leases. However, if NRS 118B.150(1)(b) were held to apply to long-term leases, it would conflict with two other provisions which expressly address the termination of long-term leases. *See* NRS 118B.040(2)(a)[2] and NRS 118B.190(5).[3]

Next, the landlords argue that coordinate branches of government have interpreted NRS 118B.150(1)(a) as not applying to long-term leases. This court has held that:

> Where a doubt may exist as to the proper construction to be placed on a constitutional or statutory provision, courts will give weight to the construction placed thereon by other coordinate branches of government and by officers whose duty it is to execute its provisions.

State v. Brodigan, 35 Nev. 35, 39, 126 P. 680, 682 (1912). In the instant case, the administrator of the Division, the agency responsible for enforcing NRS 118B.150(1)(a), testified that the Division interpreted the provision as being inapplicable during the duration of a long-term lease. Thus, we conclude that NRS 118B.150(1)(a) does not apply to long-term leases in mobile home parks, and we affirm the district court's decision.

MOWBRAY, C. J., SPRINGER, ROSE and YOUNG, JJ., and SULLIVAN, D. J.,[4] concur.

---

[2]NRS 118B.040(2)(a) states that written rental agreements for mobile homes must specify the duration of the agreement.

[3]NRS 118B.190 provides rules for the termination of oral or written leases.

